GEORGE D. FOLLMER, APPELLEE, V. STATE OF NEBRASKA, APPELLANT.

FILED JUNE 26, 1913.    No. 16,931.

1. **Courts:** PLEADING: DEMURRER: LAW OF THE CASE. The ruling of one judge of the district court upon a general demurrer to the petition is not conclusive upon another judge of the same court who afterwards tried the case. If the demurrer is erroneously sustained, the error may be corrected at a subsequent term if the case has not been finally disposed of at the prior term.

2. **Constitutional Law:** STATE OFFICERS: EMPLOYMENT OF ATTORNEY. That part of section 4778, Ann. St. 1911, which authorizes the chief officer of a department or institution to retain and employ a competent attorney in cases of importance or difficulty does not conflict with section 1, art. II of the constitution, and requires such officer to use a reasonable discretion in determining the necessity of such employment.

3. **Statutes:** CONSTRUCTION: "CHIEF OFFICER." The singular number often includes the plural in the construction of statutes, and generally when the manifest intention of the legislature requires it. "Chief officer," as used in section 4778, Ann. St. 1911, is so construed.

4. **Attorney General:** ADVISER OF STATE OFFICERS. The attorney general is the attorney for the state, and the officers who by the constitution and laws are given charge of the affairs of the state may call upon him for advice upon questions of law which arise in the discharge of their duties.

5. **State Board of Educational Lands and Funds:** EMPLOYMENT OF ATTORNEY. There is no chief officer of the board of educational lands and funds within the meaning of section 4778, Ann. St. 1911. The board acts by a majority of its members. The commissioner of public lands and buildings is by the constitution made a member of the board, but the legislature is given power to prescribe by statute the manner of the general management of the business of the board. Many special duties are by statute devolved upon the commissioner of public lands and buildings, but the employment of a competent attorney in special cases relating to the duties of the board is lodged with the board itself.

6. ———: ———: RATIFICATION. If the commissioner of public lands and buildings, as a member of the board of educational lands and funds, employs a competent attorney in a case of importance

and difficulty relating to the department of educational lands and funds, and such attorney, with the knowledge and acquiescence of a majority of the board, renders valuable services which are received and acted upon by the board without objection to the employment of such attorney, and the legislature, after being informed as to the transaction, authorizes suit to be instituted against the state upon a claim for the value of such services, in such suit the fact that the attorney was not formally employed by the board is immaterial.

7. **Action: MOTION TO DISMISS: REAL PARTY IN INTEREST.** The legislature, with full knowledge of the circumstances, by joint resolution authorized the plaintiff to prosecute this action against the state to recover the value of legal services rendered by a competent attorney at law who had been employed by the plaintiff, while commissioner of public lands and buildings, in cases of importance and difficulty relating to the department of the board of educational lands and funds. Thereupon the attorney assigned his claim for such services to plaintiff. *Held,* That plaintiff's action should not be dismissed on the ground that he is not the real party in interest, and the admission of the attorney that he did not intend to enforce his claim against the plaintiff unless plaintiff was remunerated by the state will not defeat this action.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed on condition.*

*Grant G. Martin, Attorney General,* for appellant.

*T. J. Doyle* and *G. L. De Lacy, contra.*

SEDGWICK, J.

The plaintiff was commissioner of public lands and buildings during the years 1901 to 1904, inclusive. He alleges that during that time as commissioner he employed one Edwin J. Murfin, a practicing attorney at law in the state of Nebraska, to represent the interests of the state and the board of educational lands and funds in matters pertaining to the public school lands of the state, and that the legislature of the state duly authorized the plaintiff to prosecute this action against the state. The trial in the district court for Lancaster county resulted in a

judgment in favor of the plaintiff, and the defendant has appealed.

1. It appears that the defendant filed a general demurrer to the petition, which was sustained by the district court. Afterwards the plaintiff filed a motion to set aside the ruling upon the demurrer, and also filed an amended petition. The motion was sustained and the amended petition held sufficient. The defendant now contends that the first ruling upon the demurrer became the law of the case, and that it was error to set the same aside and admit evidence under the amended petition. It seems to be conceded that the district court has control of its own judgments and orders during the term of the court at which they were made, but the contention is that after the term of court at which the order is made it becomes final. *Marvin v. Weider,* 31 Neb. 774, is cited as authority for this position, and perhaps some of the language there used might suggest such a conclusion, but that case has been twice overruled by this court, in *Perry v. Baker,* 61 Neb. 841, and in *Tiernan v. Miller & Leith,* 69 Neb. 764.

2. The next contention is that section 4778, Ann. St. 1911, is unconstitutional and void so far as it authorizes the governor or chief officer of a department or institution to employ an attorney to appear on behalf of the state. Section 1, art. II of the constitution, provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive, and judicial, and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." It is said that under this provision of the constitution the attorney general is the "head or chief officer of the law department. * * * He is the law officer of the state, whose action cannot be controlled by the state board," and that the said section 4778 is a direct violation of that constitutional provision, "in that it attempts to authorize a person belonging to one

department to exercise the power properly belonging to one of the other departments." A casual reading of the section quoted will show that it cannot be so applied. It divides the powers of the government into three departments, the legislative, executive and judicial, and provides that the officers of one of these departments shall not perform the duties of the other departments, but, of course, has no application to a distribution of duties among different officers of the executive or administrative department of the state government.

It is further contended that the attorney general has entire control of the litigation in which the state is interested by virtue of the provision contained in the first part of the said section 4778. The attorney general is, generally speaking, the attorney for the state. It is his duty to devote his time and energies to that employment, as it is the duty of attorneys generally to appear and defend the rights of their clients in the litigation in which they are employed. He is given executive powers in regard to various matters committed to his care. The officers who by the constitution and laws are given charge of the affairs of the state will continue generally to control them, although there may be litigation in regard to them. Those officers are authorized by this section of the statute to employ "a competent attorney" in cases of importance or difficulty, not necessarily as assistants of the attorney general, but an attorney with the general powers of attorneys at law for the matters in which they are employed. It is, of course, for these officers of the different departments and institutions to determine within their discretion whether the case is of importance or difficulty so as to justify the employment of counsel. They are entitled to the opinion and advice of the attorney general upon questions of law relating to their several departments, but they are not necessarily controlled by that advice in matters especially committed to their care. If the law were otherwise, any executive office of the state could be controlled by the opinion of the attorney general specifying what the law requires to be done in that office.

3. It is next contended that the commissioner of public lands and buildings is not the "chief officer of the department or institution to which" this litigation related, and so was not authorized to employ an attorney. The commissioner of public lands and buildings is a constitutional officer. His duties, however, are not specifically defined in the constitution; and the constitution also establishes a separate board for the sale, leasing and general management of all lands and funds set apart for educational purposes, "in such manner as may be prescribed by law." Const., art. VIII, sec. 1. The legislature, as it is authorized by this section to do, has provided for the organization of the board. Ann. St. 1909, sec. 10357. By this statute the governor is made chairman, and the commissioner of public lands and buildings secretary of the board, but it appears that each member of the board, which consists of the governor, secretary of state, treasurer, attorney general, and commissioner of public lands and buildings, has equal authority in the management of the school lands and funds. It seems to follow that there is no "chief officer" of this board within the meaning of the statute. In the construction of the criminal code "the singular number includes the plural" (section 246), and also in the revenue law (Ann. St. 1911, sec. 10910). The wording of section 4778 suggests that construction here. Undoubtedly the section should be construed as though it read, "the governor or chief officer or officers of the department or institution," so that where there is a board established by law, and no one with greater power in the performance of the work of the board than another has, it should require a majority of the board to act in the employment of an attorney, as in other matters.

4. While the plaintiff held the office of commissioner of public lands and buildings, a controversy arose in regard to several thousand acres of land in Boyd county. These lands had been selected as a part of the school lands of the state, but settlers were occupying them and claiming them. We do not consider it necessary to state in detail

Follmer v. State.

the conditions that caused this controversy. It is sufficient, for the purpose of indicating the questions of law that we think are involved, to say that the lands were valuable, and that the questions involved were complicated and difficult, and were affected by rulings of the land department of the government, and the matter was in litigation in the district court for Boyd county; it was transferred to the federal court of this district, and afterwards remanded, and was twice before this court.

This plaintiff and the then attorney general were both by virtue of their respective offices members of the board of educational lands and funds. They disagreed seriously as to the rights of the state in the matters involved and as to the proper course to be pursued to protect those rights. The attorney general at first advised that the lands in question be relinquished by the state to the general government in favor of the settlers, pursuant to an act of the legislature so providing. The plaintiff insisted that the act of the legislature in question was unconstitutional; that the title to the lands had become vested in the state, and under the provisions of the constitution could not be alienated. It developed afterwards that the plaintiff was right in this contention. The attorney general changed his opinion upon that point, and insisted that his first opinion was based upon an incorrect representation of the facts made by the plaintiff himself. It is unnecessary to examine the cause of the disagreement between these two public officers. If we suppose that they were both acting in good faith with a single purpose of protecting the rights of the state, it still appears, as is usual in such cases, that they allowed their personal controversy to give more or less color to their official acts. The attorney general was by virtue of his office a member of the board, and, as such, had equal authority with the other members in those matters which the law committed to their care. He was also the law officer of the state, and, as such, the members of the board were entitled to his advice upon questions of law affecting their power and duties. Under

such circumstances, and in matters of so much impor-
tance, if the board could have unanimously agreed to em-
ploy competent counsel, and the attorney general and such
counsel could have represented the board in harmony and
to the satisfaction of all the members, it would have been
in the interest of the state.    The plaintiff, not satisfied
with the advice of the attorney general, submitted the
principal question involved to the present chief justice of
this court, who was then in the practice of law, and ob-
tained his written opinion, which he submitted to the
board.    This opinion appears to have justified the views
of the plaintiff as to the legal rights of the state.    The
board appears to have accepted this opinion with approval,
and in general to have acted upon it.    The plaintiff also
early in the controversy employed Edwin J. Murfin, a
member of the bar of this state, who appears to have made
an exhaustive investigation of the whole controversy and
submitted to the board the result of that investigation.    The
board received this communication and availed themselves
of the information there contained.    Mr. Murfin, during
the whole course of controversy with the settlers, coun-
seled and assisted the plaintiff in the discharge of his
duties with respect to the matters involved, and it appears
to be conceded by all parties that the amount of this
claim would not be an unreasonable charge for the work
performed by him.    The contention is that the plaintiff
had no authority in law to employ him on behalf of the
state; that he was never employed by the board, who alone
had such authority; that, the attorney general being the
law officer of the state, whose duty it was to perform this
labor without compensation other than his salary, the
employment of Mr. Murfin was wholly unnecessary, and
that for these reasons he is not entitled to compensation
from the state.    At a meeting of the board in September,
1903, while the litigation was pending in the district court
for Boyd county, and in the absence of the attorney
general, the board adopted a resolution introduced by
Governor Mickey instructing this plaintiff "to take such

action as he may deem proper to defend the interests of the state" in that action in the district court. This appears to have been construed as an action on the part of the board determining the controversy that had existed between the plaintiff and the attorney general in favor of the plaintiff, with the effect of taking the control of the matter from the attorney general and placing it in the hands of this plaintiff. On the following day, at the request of the attorney general, Governor Mickey called a meeting of the board, and by the vote of three to two "the action of the board of educational lands and funds relative to the injunction brought against the commissioner of public lands and buildings in the Boyd county land case" was reconsidered and the action rescinded. This appears to have left the controversy between these two officers undetermined, the remaining three members of the board still being in doubt in regard to their duty in the matter, and the situation continued as before; the attorney general assuming to control the litigation as the law officer of the state, and the counsel employed by the commission of public lands and buildings attempting to represent that official, as the chief officer of the department, in the litigation. The court appears to have recognized the authority of the attorney general, but so far as pointed out in the brief, or as we have observed, the question as to the necessity of the employment of Mr. Murfin was not directly presented to, nor determined by, the courts in the progress of this litigation, nor have we discovered in this record that at any time the board of educational lands and funds repudiated the services of Mr. Murfin or expressed its disapproval of his employment. In the exhaustive and able brief of the state our attention is not called to any portion of the record showing such action by the board or by the courts. The board knew of his employment; they accepted the services he was rendering. Mr. Murfin's complete analysis of the situation, including the rulings of the land department of the government and the facts upon which the settlers on the lands based their claims, and a com-

prehensive brief of the questions of law involved and cita- tions of the authorities upon those questions, were pre- sumably of assistance to the attorney general himself, as well as to the other members of the board. If this contro- versy were between private individuals, the party accept- ing such service would be, not only morally, but legally, bound to compensate them. The joint resolution of the two houses of the legislature authorizing the plaintiff to bring this action against the state was presumably for the purpose of ascertaining whether the state has received benefit from the services procured by the plaintiff which would, as between private persons, create a legal liability, and we think such liability exists in this case.

5. It is said that as Mr. Murfin rendered the services in this case, and if any one is entitled to the compensation therefor, he is the real party in interest, and this action cannot therefore be maintained in the name of this plain- tiff. It appears from the record that, before this action of the legislature, this plaintiff made a detailed report to the legislature of the whole transaction, showing that he, as commissioner of public lands and buildings, had em- ployed Mr. Murfin, and that the services were rendered by Mr. Murfin, and upon that report the legislature author- ized this plaintiff to bring an action against the state to determine the matter. Thereupon, Mr. Murfin made a formal assignment of his claim against the state to this plaintiff. The petition alleges the resolution of the legis- lature, and the assignment of the claim to the plaintiff. Mr. Murfin testified that he was employed by the plaintiff; that he expected his compensation to come from the state; and that, while he insisted that the plaintiff was liable to him for the amount of his claim, he did not intend to assert his claim against the plaintiff unless the state would remunerate the plaintiff, and that he had so informed the plaintiff. It is insisted that this testimony shows that the interest of the plaintiff in the case is colorable only, and that he is not the real party in interest. If it appeared that Mr. Murfin had released the plaintiff from all liability

18

upon consideration that the plaintiff should pay to him whatever he might recover from the state, there would be force in this objection, under the decision in *Hoagland v. Van Etten*, 22 Neb. 681. But, so far as this evidence shows, the liability of the plaintiff to Mr. Murfin still exists. Mr. Murfin's statement, after the services were rendered, that he would not enforce his claim against the plaintiff unless the plaintiff was remunerated by the state was wholly without consideration. Since the legislature has authorized this claim to be prosecuted in the name of this plaintiff, and Mr. Murfin has assigned his claim to the plaintiff, so that the result of this litigation will be a complete bar, we think the objection that the plaintiff is not the real party in interest should not be allowed to defeat this claim.

The jury found the amount of plaintiff's claim to be $1,100, and upon this they compute interest from February 28, 1905, $404.04, making the amount of the verdict, $1,504.04. The record recites that the plaintiff's claim was filed with the legislature on the 28th of February, 1905. This was probably an error; but, however that may be, the resolution of the legislature was concurred in on the 1st day of April, 1909, and under the circumstances in this case the plaintiff should not recover interest prior to that date. In his claim before the legislature he does not ask for interest, and in the resolution authorizing the prosecution of this suit it is recited that the claim is for expenses incurred for services performed by Mr. Murfin, and there is no authority there given to prosecute any suit for interest, therefore there should be no recovery for interest prior to the authorization to bring this suit. The judgment was entered in the district court on the 27th day of May, 1910. The interest on $1,100 from April 1, 1909, to that date at 7 per cent. would amount to $89.26. The judgment therefore in excess of $1,189.26 is erroneous. If the plaintiff will file with this court a remittitur of $314.78 from the judgment within 60 days from the filing

**of this** opinion the judgment will stand affirmed; otherwise **the judgment** will be reversed.

AFFIRMED ON CONDITION.

REESE, C. J., and ROSE, J., not sitting.