**In re SWESEY.**

No. 20726.

United States District Court
N. D. Ohio, W. D.

June 2, 1953.

774

Frank C. Kniffin, Toledo, Ohio, referee in bankruptcy.

Carl J. Marlow, Toledo, Ohio, trustee in bankruptcy.

Milton N. Swanson, Toledo, Ohio, for bankrupt.

Harold Hanley, Toledo, Ohio, for trustee.

Marshall, Melhorn, Bloch & Belt, John B. Spitzer, Toledo, Ohio, for petitioner Industrial Nat. Bank.

KLOEB, District Judge.

The question before the Court is whether or not the chattel mortgage lien of the Industrial National Bank of Detroit, Michigan is a valid lien upon the proceeds of sale of the automobile owned by the bankrupt sold by the trustee under the orders of the Referee. It is the contention of the trustee, and the referee so held, that under the Ohio Certificate of Title Law, Secs. 6290, 6290–20, G.C.O., particularly Sec. 6290–4, as construed in the cases of Mielke v. Leeberson, 150 Ohio St. 528, 83 N.E.2d 209, 7 A.L.R.2d 1342, and Kelley Kar Co. v. Finkler, 155 Ohio St. 541, 99 N.E.2d 665, the chattel mortgage is invalid because an Ohio certificate of title had not been obtained under that law. Counsel for the bank on the motion for rehearing cited the case of In re Mitchell, D.C., 104 F.Supp. 969, a case decided by Judge McNamee of the Eastern Division, Northern District of Ohio, affirmed by the Court of Appeals for the Sixth Circuit in 202 F.2d 426.

The facts in the case before the Court, in substance, are as follows: The bankrupt, on or about April 4, 1952, purchased from a dealer in Detroit a 1952 Plymouth convertible, and executed and delivered to the dealer a note and chattel mortgage as part payment of the purchase price. The dealer assigned the note and mortgage to the bank, upon which there is admittedly due $1,833.62, with interest at 8% from May 15, 1953, the lien of which is in controversy here. The bankrupt gave his address on the chattel mortgage as 2527 Blaine Street, Toledo, Ohio. It is alleged, and not denied, that the bankrupt at the time informed the dealer that his residence was then Toledo, Ohio, but that he had obtained employment in Detroit and for that reason wished to secure a Michigan certificate of title. At the time of the purchase, the bankrupt made and there was filed with the Secretary of State of Michigan an application for a Michigan certificate of title, which was issued to him, and he obtained Michigan license plates for the car. The bank filed the chattel mortgage with the Register of Deeds, Wayne County, Michigan, in which Detroit is located, on April 11, 1952, and had the mortgage recorded by the Secretary of State of Michigan on the Michigan certificate of title as appears from the exhibits attached to its answer. There is no dispute but that all of the requirements of the Michigan laws were complied with with respect to this transaction.

The bank was made a party to the trustee's proceeding to sell the automobile free of liens and filed an answer consenting to the sale but asking that its chattel mortgage lien be declared valid and be paid out of the proceeds of sale next after the expenses thereof. A hearing was had on the question of the validity of the mortgage, upon which testimony was taken, but no stenographic record or transcript appears among the papers transmitted, nor does there seem to have been any agreed stipulation of facts filed. However, none of the facts above stated seem to be in controversy. The question appears to be simply one of law.

The bankrupt filed his voluntary petition in this Court on July 21, 1952, and was adjudicated. At that time he had possession of the automobile and the Michigan certificate of title, upon which there was noted the lien of the bank, and of which the trustee took possession. No Ohio certificate of title had been applied for or obtained by the bankrupt, presumably because he had obtained employment in Detroit and expected to use the car in the State of Michigan.

Sec. 6290–4, G.C.O., upon which the Referee relied reads as follows:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or *mortgaged or encumbered,* unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter." (Emphasis added.)

The case of Mielke v. Leeberson, supra, 150 Ohio St. 528, 83 N.E.2d 209, 210, cited and quoted by the Referee, held:

"Under the plain and unambiguous language of Section 6290-4, General Code, a court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle, without the production of a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the Certificate of Title Law, * * *."

This case arose out of an automobile collision in the City of Toledo. The plaintiff and his insurance company brought the action upon the theory that the plaintiff was the owner of the auto which he was driving. The trial resulted in a verdict and judgment in favor of the plaintiff. The Court of Appeals reversed on the sole ground that there was not sufficient evidence to establish plaintiff's ownership, and that, therefore, plaintiff having failed to sustain an essential element of his claim, final judgment must be rendered against him. The Supreme Court reversed the Court of Appeals and remanded the case for a new trial. The Court stated:

"Except for the requirement of Section 6290-4, General Code, plaintiff's ownership of the automobile he was driving was abundantly proved." 150 Ohio St. at page 532, 83 N.E.2d at page 212.

\* \* \* \* \* \*

"In our view of the case, since there was evidence of plaintiff's ownership, although such evidence can never be sufficient without the production of a certificate of title, the proper procedure is a reversal and a remanding for a new trial." 150 Ohio St. at page 535, 83 N.E.2d at page 213.

This case does not seem to be at all analogous on the facts to the case here and would not appear to be applicable.

The case of Kelley Kar Co. v. Finkler, supra, 155 Ohio St. 541, 99 N.E.2d 665, 666, was also cited by the Referee in support of his conclusion. The facts in this case appear to be that, in August, 1947, the plaintiff, located at Los Angeles, California, sold a used 1946 Cadillac convertible to one Anderson, upon which there was an unpaid balance of $4,901 to secure which a conditional sale contract was executed between the parties which reserved title in the seller until the purchase price was paid. Ten days after the purchase, Anderson appeared with the car in Vermont and then secured from the Vermont Motor Vehicle Department a certificate of title which indicated that he was the owner of the car and on which there were no liens noted. Anderson conveyed the car to one Jack Collins, who procured a Vermont registration in his name and then transferred the title of the car back to Anderson. On October 9, 1947, Anderson appeared in Cleveland, Ohio with the car and procured an Ohio certificate of title from the Clerk of Courts of Cuyahoga County as replacement for the Vermont certificate which he had obtained from Collins. He did not inform the Clerk of any interest in the car of The Kelley Kar Company. On October 14, 1947, the defendant Finkler purchased the car from Anderson and obtained an Ohio certificate of title in

his name upon surrender of the one previously held by Anderson. In January, 1948, The Kelley Kar Company, relying on its California conditional sale contract, filed a petition in the Court of Common Pleas of Erie County, Ohio to replevin the car. No question of lack of good faith appears in the case.

It thus appears that the plaintiff was relying upon its California conditional sale contract, while the defendant was relying upon his Ohio certificate of title upon which there was no notation of the plaintiff's interest or lien. The Supreme Court of Ohio held that, under these circumstances, the plaintiff could not recover.

It is apparent that the facts in the above case are not in any way analogous to the facts of the case here. We are also of the opinion that the decision of the Supreme Court in that case is not controlling under the facts in the case before us.

Syllabus 3 in that case indicates that the Court was construing the statute as applicable only to automobiles sold or encumbered in the State of Ohio and did not intend to give the statutes any extra-territorial effect. The syllabus reads as follows:

> "Under the provisions of Section 6290-4, General Code, an Ohio court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle sold or disposed of or mortgaged or encumbered *in Ohio* after the effective date of that section of the Code unless such right, title, claim or interest is evidenced by a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the provisions of the Certificate of Title Act"

As appears from the admitted facts, the automobile in this case was not sold or disposed of or mortgaged or encumbered *in Ohio*. It was sold and mortgaged in Michigan. There is no question raised but that the sale and encumbrance of this automobile was valid under the laws of Michigan. There is nothing in the Ohio Certificate of Title Law which indicates an intention on the part of the legislature to make a transaction of this kind, valid under Michigan

laws, void under the laws of Ohio, and the Court will not read into the statute language which is not there.

The Supreme Court of Ohio apparently recognized the distinction above referred to, and that the law has no extra-territorial effect, in the case of State ex rel. City Loan & Savings Co. v. Taggart, 134 Ohio St. 374, 379, 17 N.E.2d 758, 760, holding the Ohio Certificate of Title Law constitutional, in which the Court said:

> "*No extra-territorial scope may be given to these sections.* The law must be limited in its operation to those manufacturers, etc., *who are subject to the jurisdiction of Ohio,* and to those persons *in Ohio* who are obligated to secure a certificate of title under the law of this state. If they do not present the documentary proof demanded they are not entitled to a certificate." (Emphasis added.)

In the case of Ragner v. General Motors Acceptance Corporation, 1947, 66 Ariz. 157, 185 P.2d 525, 528, a similar question came up, and the Court there said:

> " * * * The statute was not intended to have extra-territorial effect other than would be accorded it through the rule of comity. This statute sets forth the modus operandi for registering motor vehicles, securing certificates of title, and establishing liens in this state by and for the citizens of this state. The statute specifically says that a lien can be acquired only in the manner set forth in the statute, and that the instrument creating the lien 'shall be executed in the manner required by the laws of this state. * * *' *It is inconceivable that the legislature contemplated that it had the authority or was attempting to set forth the manner in which other states might create the means for establishing liens.* * * * Though the language of the statute is broad enough to authorize the interpretation contended for by appellants, certainly it is not compelling nor do we believe that it is warranted."

There is no requirement in the law that an out-of-state mortgagee or the purchaser

in this case must procure an Ohio certificate of title, if the purchaser is at the time of the purchase a resident of Ohio. The purchaser in this case could undoubtedly have transferred the certificate to a resident of Michigan or some state other than Ohio and given a good title, without complying with any requirements of the Ohio law. Provision is made in the law, Sec. 6290–5, G.C.O., for the issuance of a certificate of title in Ohio if a certificate of title has not previously been issued for the automobile in this state, upon application as therein provided, but there is nothing in the law which provides that the owner of such an automobile or the mortgagee holding a lien upon any such automobile, if the owner is a resident of Ohio, must apply for and obtain an Ohio certificate of title either within a certain limited time after bringing the automobile into this state or at all.

█ That an out-of-state certificate of title may be recognized by the Courts of Ohio without an Ohio certificate of title being issued therefor to the owner is held in the case of Mock v. Kaffits, Franklin County, 1944, 75 Ohio App. 305, 62 N.E.2d 172. In that case, the automobile was owned by a resident of Pennsylvania who held a Pennsylvania certificate of title. The automobile was stolen, brought to Ohio and the motor number was changed. An Ohio certificate of title issued under the changed motor number without any reference to a lien which existed on the car. The car was sold to plaintiff and afterwards seized by the police as a stolen car. The plaintiff, the Ohio purchaser, commenced an action in replevin. The Court decided against him on the ground that the certificate he held did not cover the car because the motor number was wrong, and that the only certificate of title upon the vehicle which the Court recognized was the Pennsylvania certificate, the holder of which was entitled to the possession of the car.

Referring to the case of In re Mitchell, supra, D.C., 104 F.Supp. 969, while that case is not in point on the facts, it does have to do with the construction of certain provisions of the Ohio Certificate of Title Law and what the Court there held has some application here. In that case, the facts appear to be as follows: The bankrupt, one Mitchell, purchased a house trailer from a dealer located at 13720 Lorain Avenue, Cleveland, Cuyahoga County, Ohio, made a down payment, executed a note secured by chattel mortgage for the balance and signed an application for a certificate of title, with his address thereon in blank. The note and mortgage were assigned to the Michigan National Bank, whose secured claim was contested by the trustee in bankruptcy. The address of the bankrupt was later filled in as 13720 Lorain Avenue, the address of the dealer, by mistake. At the time of the purchase, the bankrupt resided on Lorain Avenue in the Village of Ridgeville, Lorain County, Ohio. The Clerk of Courts of Cuyahoga County issued a certificate of title to the bankrupt and noted thereon that the bank was the holder of a chattel mortgage for the balance due thereon. The bank asserted its lien in a proceeding by the trustee to sell the trailer. The Referee held the mortgage void because it was not filed in Lorain County. The trustee contended that the lien claimed by the bank was invalid under the Ohio Certificate of Title Law and relied upon an opinion of the Attorney General to the effect that an application for a certificate of title must be filed in the county of the residence of the applicant and that non-compliance renders the certificate void. Judge McNamee held that there was no express language in the statute stating that a certificate of title mistakenly issued in the wrong county is void and that there was no sound reason for declaring a transfer of title invalid where, through mistake, the purchaser's address is incorrectly stated in the application. He did not discuss the Ohio Supreme Court decisions referred to herein. He quoted in support of his conclusions from In re Lowry, 4 Cir., 40 F.2d 321, 322, which seems to be applicable here:

" 'Under the circumstances here to take that which in all equity and justice is the property of appellant for the benefit of general creditors would not be doing equity.' " 104 F.Supp. 972.

This case was affirmed by the Sixth Circuit Court of Appeals in a memorandum opinion, reading as follows, 202 F.2d 426:

. "This appeal having been heard upon the record, briefs and argument of counsel· for the· respective parties,

"And the Court being of the view that the opinion of the Attorney General of Ohio construing the statute herein involved, is not controlling in the decision of this case within the meaning of the rule announced in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; In re Avery, 6 Cir., 114 F.2d 768, 770; In re Zaepfel & Russell, Inc., D.C., 49 F. Supp. 709, 710, affirmed Farmer's State Bank v. Jones, 6 Cir., 135 F.2d 215; Leddy v. Cornell, 52 Colo. 189, 120 P. 153, 38 L.R.A.,N.S., 918; Follmer v. State, 94 Neb. 217, 142 N.W. 908; Jones v. Williams, 121 Tex. 94, 45 S. W.2d 130, 79 A.L.R. 983;

"And that the construction and application of the statute to the facts of this case, as made by the District Judge, is not erroneous;

"It is ordered that the judgment of the District Court be affirmed on the grounds and for the reasons stated in the opinion of the District Judge."

Referring to the cases cited by the Court of Appeals above, the case of In re Avery, 6 Cir., 114 F.2d 768, held, with reference to the application of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188:

"It is urged here that the decision of the District Court was in the teeth of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Assuming that the decision was contrary to the holdings of the highest · court of Michigan, still we can find no basis for the conclusion that Erie R. Co. v. Tompkins, supra, has any application to the question presented here. The court was not sitting in a trial at common law,—to the contrary, it was considering the effect in bankruptcy of facts found by its special master." 114 F.2d at page 770.

The case of In re Zaepfel & Russell, Inc., D.C., 49 F.Supp. 709, also held:

"The rule announced in the case of Erie R. Co. v. Tompkins, 304 U.S. 64,

58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, *is not applicable to the consideration of facts in a bankruptcy proceeding*. In re Avery, 6 Cir., 114 F.2d 768. * * *" 49 F.Supp. at page 710. (Emphasis added.)

Leddy v. Cornell, 52 Col. 189, 120 P. 153, Follmer v. State, 94 Neb. 217, 142 N.W. 908, and Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130, 79 A.L.R. 983, all held, in effect, that the opinion of an Attorney General, while persuasive, is not conclusive or binding upon State officers or the Courts.

For the reasons above stated, we are of the opinion that the petition for review of the referee's order should be sustained and the chattel mortgage lien of the bank as a secured claim allowed as against the proceeds of sale of the automobile in question.

NOTE: For a discussion of the Ohio law applicable, see 6 O.S.L.J. 291 and 13 O.S. L.J. 296; for a general discussion on the subject see 96 Pa.L.R. 455.