REQUESTED BY: Senator Roger R. Wehrbein Nebraska State Legislature
On August 12, 1994, the Nebraska Department of Social Services (the "Department") entered into a contract with an entity called Maximus which provides that Maximus is to assist the Department in increasing the federal revenues obtained by the state in connection with programs administered by the Department where federal funds are available. In return for this assistance in obtaining additional funding, the contract provides that Maximus is to receive a set percentage of the total net increase in federal funds secured by the state over a two-year period as defined in the contract. You have posed two questions to us in connection with this contract between the state and Maximus.
1. Authority of the Department to contract with Maximus.
You first ask, "does the Department of Social Services have the authority to enter into such a contract such that the contract is binding on the state of Nebraska?" We must respectfully decline to provide on opinion to you on this question for the reasons discussed below.
On February 17, 1995, Matt Butler filed an Application in the Nebraska Supreme Court asking for leave to file an original action in that Court which would test the constitutionality of the Maximus contract at issue. The named defendants in that Application included Governor Nelson, State Treasurer Heineman, and Mary Dean Harvey, Director of the Department of Social Services. It is our understanding that Mr. Butler's Application for leave to file an original action was denied by the Supreme Court on February 23, 1995. Nevertheless, Mr. Butler could still proceed with his action to test the constitutionality of the contract in district court, in which case we would be called upon to defend the state constitutional officers involved and the contract. Since it appears that litigation may be imminent with respect to this contract, we must decline to issue the opinion you requested in keeping with our general policy which is to decline to offer opinions on matters involved in pending litigation.
In addition, in our Op. Att'y Gen. No. 157 (December 24, 1985) to Senator Beutler, we noted that state officers are generally entitled to our advice upon questions of law which arise "in the discharge of their duties." Fullmer v. State, 94 Neb. 217, 142 N.W. 908 (1913). In keeping with that rule, we stated that our policy is to provide opinions to state legislators for valid legislative purposes only, which normally include the passage, alteration, or repeal of state statutes. In the present instance, your question concerning the Department's authority to enter into the Maximus contract is not tied to any specific legislative bill pending before the current session of the Legislature, nor have you stated any other legislative purpose for your inquiry. Therefore, we must respectfully decline to provide the opinion which you have requested concerning the Department's authority for the Maximus contract.
2. Authority of the Legislature to void the Maximus contract.
Your second question involves LB 519 and the Maximus contract. That bill states, in its entirety:
 Sec. 1. The Legislature finds that contingent fee contracts which provide for the payment of millions of dollars in fees by the state should be subject to legislative review and public scrutiny before being executed by a state agency on behalf of the state. Therefore, any contract between a state agency and another party which purports to obligate the state to pay contingent fees based upon the net increase in federal financial participation revenue obtained through the actions of the other party is void. This section applies to contracts executed prior to, on, or after the effective date of this act.
 Sec 2. Since an emergency exists, this act takes effect when passed and approved according to law.
You wish to know, "if the Department of Social Services has the authority to enter into such a contingency contract and this [Maximus] contract is binding on the state, then can the legislature pass subsequent legislation that invalidates this contingency contract as embodied in LB 519?" For the reasons discussed at length below, we believe that there are constitutional difficulties with legislation such as LB 519 which would invalidate or void existing contracts with the state.
For purposes of your question involving the Maximus contract and LB 519, we assume that the Department has the necessary authority to enter into the contract, and that the contract is binding upon the state. Under those circumstances, contracts to which a state is a party are within the constitutional prohibitions against the impairment of the obligations of contracts. U.S. Const. art.I, § 10, cl. 1; Neb. Const. art. I, § 16; 16A C.J.S. Constitutional Law § 287. As stated by the Nebraska Supreme Court in Todd v. Board of Educational Lands and Funds, 154 Neb. 606, 48 N.W.2d 706 (1951):
 [The state], by entering into a contract, abandons its attributes of sovereignty and binds itself, to the extent of its power to contract, substantially as an individual does when he makes a contract. The state may not impair any of the substantial rights secured by its contract to a citizen with whom it contracts. * * *
 A lease made in compliance with the direction and permission of the Legislature between the state and the lessee is a contract and is property. The rights resulting from the contract vest on its execution and delivery. The state may not subsequently by legislation deprive the lessee of any substantial right secured to him by the lease. Constitutional guarantees and prohibitions safeguard it. These include the mandate that no state shall deprive any person of property without due process of law; no state shall enact any law impairing the obligations of a contract; and the property of no person shall be taken or damaged for public use without compensation.
Id. at 610, 611, 48 N.W.2d at 710. Therefore, the obvious question presented by LB 519 and its provisions which would void an existing contract is whether that bill, if passed, would unconstitutionally impair the obligations of a contract with the state. We believe that it is likely that a court would conclude that such an impairment does exist.
In Halpin v. Nebraska State Patrolmen's Retirement System,211 Neb. 892, 320 N.W.2d 910 (1982), the Nebraska Supreme Court set out the considerations which must be taken in account with respect to legislation which might impair a state's own obligations:
 "Where . . . it is claimed that the contract clause prohibits a state's statutory modification of its own obligations, the court must determine whether contractual obligations within the purview of the contract clause exist; if so, whether the state legislation under attack impaired those obligations; and if there is an impairment of contract, whether it is forbidden by the Constitution."
Id. at 896, 897, 320 N.W.2d at 913 (quoting Pineman v. Oechslin,494 F. Supp. 525, 538 (D.Conn. 1980)). A similar analysis is necessary with respect to LB 519.
With regard to the initial determination required in the Halpin
case, the court in that instance engaged in a detailed analysis of state patrol pension provisions to determine if those provisions created contractual obligations and rights which were enforceable on behalf of the state patrol officer who was the plaintiff. In the present instance, no such analysis is necessary. A contract currently exists between the Department and Maximus which imposes obligations upon both of those parties and which would be voided if LB 519 is enacted. We believe that this contract comes within the purview of the Contract Clause for the reasons stated in the Todd case cited above.
The next consideration with respect to LB 519 involves a determination as to whether that bill would impair the obligations contained in the Maximus agreement.
At first glance, it seems obvious that legislation which would void a particular contract would impair the obligations of that contract. However, there are a number of cases which indicate that impairment of a contract's obligations and breach of that contract may be distinguished, and that a state may breach its contract or refuse to perform it without impairing its obligations under that contract.[1] Hays v. Port of Seattle,251 U.S. 233 (1920); Brown v. State of Colorado, 106 U.S. 95 (1882);Grantbaum v. City of Chadron, 20 F.2d 40 (5th Cir. 1927), McDougal v.Racine County, 156 Wis. 663, 146 N.W. 794 (1914). The damaged party's remedy in such an instance is a suit for damages, and the theory is that the obliation of the state still exits, it simply has been repudiated, and that repudiation forms the basis for damages. As the United States Supreme Court stated in the Hays case, which involved a contract for work on the port of Seattle:
 . . . it is important to note the distinction between a statute that has the effect of violating or repudiating a contract previously made by the state and one that impairs its obligation. Had the Legislature of Washington, pending performance or after complete performance by complainant, passed an act to alter materially the scope of his contract, to diminish his compensation, or to defeat his lien upon the filled lands, there would no doubt have been an attempted impairment of the obligation. The legislation in question had no such purpose or effect. It simply . . . provided that the project should be abandoned and to the public lands turned over to the municipality. * * * [the municipality's] obligation remained as before, and formed the measure of [the complainant's] right to recover from the state for damages sustained.
251 U.S. at 237. These cases, therefore, seem to indicate that legislation requiring a breach or abandonment of the Maximus contract would not violate the Contract Clause, in part because, in such an instance, the state would still have an obligation under the contract which could form the basis for a suit against the state for damages. However, LB 519 goes beyond requiring a breach of the contract with Maximus, and provides that the Maximus contract and others like it shall be void. A void contract generally is of no force or effect and incapable of being enforced by law. Black's Law Dictionary 1411 (5th ed. 1979). Consequently, a further issue remains concerning LB 519 and the Contract Clause. That issue involves the basis for the differentiation between breach and impairment discussed above.
In Ogden v. Saunders, 25 U.S. 213 (1827), the United States Supreme Court stated:
 [T]he error of those who controvert the constitutionality of the bankrupt law under consideration . . . has arisen from not distinguishing accurately between a law which impairs a contract, and one which impairs its obligation. A contract is defined by all to be an agreement to do, or not to do, some particular act;. . . . Any law, then, which enlarges, abridges, or in any manner changes, this [agreement] . . . necessarily impairs the contract . . . * * *
 It is a law which impairs the obligation of contracts, and not the contracts themselves, which is interdicted [by the Contract Clause]. * * * What is it, then, which constitutes the obligation of a contract? * * * It is the law which binds the parties to perform their agreement. The law, then which has this binding obligation, must govern and control the contract, in every shape in which it is intended to bear upon it, whether it affects its validity, construction or discharge.
Id. at 256, 257. This distinction between impairment of the contract and impairment of the obligation of the contract was further described by the Supreme Court of Oregon as follows:
 The distinction has an analogy in private contract law in the distinction between a failure or refusal to perform according to the terms of a contract and an assertion of the invalidity or nonexistence of the contract terms under which that performance is specified. A failure or refusal to perform a contract is not inconsistent with recognition of the contract's validity.
 Ogden v. Saunders, supra, established that the obligation of a contract was to be understood as the legal duties imposed upon the contracting parties by the operation of law upon the contract. Ordinarily, parties to a contract are not obliged to perform the contract according to its terms; in lieu of performance, the breaching party may compensate the nonbreaching party for the failure to perform as directed by the contract. "It has been said, that the obligation of a contract consists in the power and efficacy of the law, which applies to, and enforces performance of it, or an equivalent for non-performance."
Eckles v. State of Oregon, ____ Or. ____, 760 P.2d 846, 859 (1988) (citations omitted).[2] As a result, the Contract Clause does not prevent the Legislature from enacting legislation which would require abandonment or other impairment of the Maximus contract, so long as the underlying obligation upon the state remains, and so long as a cause of action against the state remains for damages. On the other hand, legislation such as LB 519 which would void the state's underlying obligation under the Maximus contract, presumably along with any cause of action against the state for breach of contract, would impair the state's contractual obligations under the Contract Clause in both the federal and state constitutions. This situation involving LB 519, therefore, meets the second portion of the Halpin test set out above.
The final portion of the Halpin test involves a determination as to whether the particular impairment of contractual obligations in question is forbidden by the Constitution. Certain impairments may pass constitutional muster if they are both reasonable and necessary to serve an important public purpose. Halpin at 901, 320 N.W.2d at 915. However, meeting this important public purpose test is no easy task, and the legislation in question must involve a vital interest of the state.Halpin at 901, 320 N.W.2d at 915. As the Court noted,
 . . . the application of the tests of necessity and reasonableness requires a much greater degree of judicial scrutiny in cases, such as this one, involving [state action] which purports to abrogate a state's own financial obligation than in cases involving an impairment by the state of purely private contracts.
Halpin at 901, 320 N.W.2d at 915.
Given the stringent standard set out in the Halpin case involving the state's own obligations, we believe that a court would have some difficulty in finding that the impairment of contractual obligations occasioned by LB 519 involves a vital interest of the state. Since we must assume that the Department has the authority to enter into the Maximus contract, we must also assume that the Legislature, at some point, saw fit to give the Department that authority. Moreover, the brief provisions of LB 519 do not provide much indication as to what vital interests of the state would be furthered by voiding the Maximus contract at this date, and LB 519 clearly does not involve an exercise of the state's police power, an exercise of the power of eminent domain or any of the other reasons traditionally offered as justifications for the state's impairment of contractual obligations. Energy Reserves Group v.Kansas Power Light, 459 U.S. 400 (1983); Home Bldg. Loan Ass'n. v.Blaisdell, 290 U.S. 398 (1934); West River Bridge Co. v. Dix, 47 U.S. 507
(1848). As a result, it appears to us that the impairment of contractual obligations brought about by LB 519 would be forbidden by the Constitution. That bill, therefore, is improper under the criteria established in the Halpin decision.
In sum, we do not believe, for the reasons discussed above, that the Legislature may constitutionally void the existing Maximus contract through passage of LB 519. We would note, however, that our conclusions in that regard apply only to those portions of LB 519 which would void existing contracts with the state. The Legislature, if it chooses, may constitutionally provide that contracts of the nature of those proscribed by LB 519 are void if entered into on or after the effective date of the legislation in question.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
05-31-14.op
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved by:
_____________________ Attorney General
[1] Both the federal and state constitutional provisions at issue prohibit the Legislature from passing laws which would impair "the obligation of contracts."
[2] The Eckles case involved the constitutionality of an Oregon statute under the Contract Clause of the Oregon Constitution. That provision is almost identical to art. I, § 16 of the Nebraska Constitution, and prohibits laws which would impair the obligation of contracts.