C. W. LEE and E. L. CONNOR, as Co-partners trading as Lee-Connor Motors, v. THE BANK OF GEORGIA, successor to the Morris Plan Bank of Georgia, a corporation under the Laws of the State of Florida.

32 So. (2nd) 7 `                                   June Term, 1947
September 30, 1947                                   Division B
Rehearing denied October 25, 1947

*M. H. Myerson* and *J. Henry Blount,* for appellant.

*David J. Lewis,* for appellee.

BUFORD, J.:

In April, 1946, William D. Windsor being then a resident of Fulton County, Georgia, obtained a loan of $1,537.00 from The Bank of Georgia and concurrently therewith executed and delivered to the plaintiff, payable to its order, a certain promissory note bearing said date for the sum of $1,537.00 with interest at 4% per annum, payable monthly in installments of $66.74, the first installment being due on June 1, 1946. On the same day, in order to secure the payment of the said promissory note, Windsor being then and there the owner of a certain automobile, made, executed and delivered to plaintiff then under the name of "The Morris Plan Bank of Georgia," its successors and assigns, two instruments called bills of sale to secure debt upon one certain 1942 Dodge automoble, 4 door custom sedan, motor No. NC-25082. The said note and the said bills of sale covering said automobile were filed for record on May 10th, 1946, in the office of the Clerk of the Superior Court of Fulton County, Georgia, and recorded in Book 2178, page 346, as required by applicable statutes of Georgia.

On November 26, 1946, plaintiff filed its bill of complaint in the Circuit Court of Duval County to foreclose said bills of sale given to secure the note aforesaid against William D. Windsor, whose residence and whereabouts were then unknown, and against C. W. Lee and E. L. Connor as co-partners trading as Lee-Connor Motors of Jacksonville in Duval County, Florida.

The bill of complaint alleged the making and delivery of the note and bills of sale securing the same by Windsor and the recording of the same in the office of the Clerk of the Superior Court of Fulton County, Georgia, and averred that without the knowledge or consent of the plaintiff Windsor brought the automobile into Florida after having defaulted in making payments due on November 1st, 1946, and all subsequent payments and that Windsor subsequently, without the knowledge or consent of the plaintiff, disposed of the

automobile to one Jessie W. Proctor who in turn transferred said automobile to one Howard Marsh of Jacksonville, Florida, who in turn transferred same to C. W. Lee and E. L. Connor as co-partners trading as Lee-Connor Motors, who at the institution of the suit had the automobile in their possession.

After motion to dismiss was filed and overruled the defendant Lee-Connor Motors answered the bill of complaint. The answer denies that the claim of the defendants to title to said automobile is subordinate and inferior to the alleged lien of the plaintiff. The answer then avers:

"Further answering said bill of complaint, these defendants say that on or about the 14th day of October, 1946, they purchased from Howard M. Marsh, of 215 E. 11th St., Jacksonville, Florida, the automobile mentioned and referred to in the bill of complaint, paying to the said Marsh, as the purchase price of said automobile, the sum of One Thousand Seventy-five Dollars ($1,075.00). That at the time of the purchase of said automobile, these defendants had no knowledge whatsoever of any liens or encumbrances against said automobile; that, on the contrary, these defendants purchased said automobile with positive assurance from the said Howard M. Marsh that there were no liens or encumbrances against said automobile; that at the time of the purchase of said automobile, the said automobile was registered in the name of Howard M. Marsh under Tag No. 2D 38395, under Florida registration for the year 1946, such registration having been made by the said Marsh under date of October 10, 1946; that before making such purchase these defendants verified from the Office of Motor Vehicle Commissioner, at Tallahassee, Florida, that there were no liens against said automobile registered in the Office of Motor Vehicle Commissioner of Florida, as required by law in order to entitle the holder of any such lien to have an enforceable lien in the State of Florida; that application for title certificate was made by the said Howard M. Marsh and Title Certificate Number 1933846 B was issued to the said Howard M. Marsh by the Motor Vehicle Commissioner, which said certificate was transferred to these defendants by the said Howard M. Marsh. That in and by the transfer of the aforesaid Motor Vehicle

Certificate of Title, in the space on the reverse *said* of said certificate in the form provided, it is .particularly shown that said automobile was free of liens. These defendants further say that they are purchasers for value of said automobile; that they had no knowledge whatsover of any purported lien in favor of the plaintiff in this cause; and these defendants further say that the alleged lien of said plaintiff was not, at the time they acquired title to said automobile, of record in this State and that no sworn notice of such alleged lien showing (1) name and address of the registered owner, (2) date and amount of lien, (3) description of motor vehicle, particularly showing make, type, motor and serial number, and (4) name and address of lien holder; was of record and recorded in the Office of the Motor Vehicle Commissioner of the State of Florida, all in accordance with the provisions of Section 319.15,.Florida Statutes 1941. And, these defendants further say that the notice of lien, which lien is sought by the bill of complaint to be foreclosed by these proceedings, was not filed in the Office of the Motor Vehicle Commissioner of the State of Florida, as required by the aforesaid mentioned provision of law and the said plaintiff, therefore, has presented such a cause as is not cognizable and enforceable in the Courts of this State."

Thereafter, the parties, through their counsel, entered into a stipulation as to the facts involved in the case. This stipulation established the facts as heretofore outlined and as averred in the answer.

The case being submitted to one of the Circuit Judges of Duval County, he entered his decree in favor of the plaintiff. From this decree appeal was perfected.

We conceive the question to be determined is that as stated by .the appellant as follows:

"Is a lien on an automobile, valid in Georgia where contracted, enforceable in Florida against a purchaser in Florida without notice of such lien, where it appears the owner brought the car to Florida, a Florida registration certificate is obtained which shows no liens and a sale is made for full value to Florida citizens, all in the absence of compli-

ance with the Florida Statutes which prohibits the enforcement of such liens unless sworn notice of the same is recorded in the office of the Motor Vehicle Commission of the State of Florida?"

In II American jurisprudence page 306-361, Sec. 75, the law applicable to this case is enunciated and ample authorities are cited to support the text.

"Although the priority of right as between a chattel mortgage in one state and an attachment, levy or purchase of the mortgaged property in another to which it has thereafter been removed is to be determined by the law of the latter state, unless there is something in the statutory law or public policy of such state which prohibits application of the law of the state where the property was located before removal, courts of the state of removal generally determine priorities by the effect of the mortgage under the law of the state where the property was located before removal. If the mortgage is valid according to the law of the state where the property was located before removal, as a general rule it will be enforced in the courts of the state to which the property has ben removed as a matter of comity, although it is not executed or filed according to the requirements of the law of the state of removal. This is especially true where property is removed without the knowledge or consent of the mortgagee. Ordinarily, the rights of the mortgagee are protected even though subsequent to its removal others acquire rights or interests therein, unless there is in the state to which the property is removed a statute expressly requiring the filing or recording of mortgages upon property subsequently brought into the state, in which case the statute is, of course, conclusive of the question under consideration.

"Conversely to the general rule, a chattel mortgage invalid in the state where made because of lack of compliance with the laws thereof, such as failure to file or record, is not a lien in a state to which the property is subsequently removed. This latter rule is subject to some interesting qualifications if the law of the state where the property was originally situated recognizes that as between the original parties

the mortgage was valid without filing. Where the mortgage is filed or recorded in the state to which the property was removed, the failure to file or record in the state in which the mortgage was executed and the property then located will not defeat the lien as against a third person whose rights, or claim of right, arose after the removal of the property, assuming that by the law of the state in which the mortgage was executed and the property then located, the mortgage would be good as between the parties without filing or recording. Under certain novel circumstances, a similar result may be reached if it is not shown that the law of the country where the property was originally situated created any lien which would be invalid in the state of removal because there was no change of possession to the mortgagee. Thus, the law of the state of removal which requires immediate delivery and actual change of possession as a condition of validity, as against creditors, of unrecorded chattel mortgages cannot be given effect so as to invalidate a mortgage, as regards certificates of stock which at the time of the execution of the mortgage were in another country, but were afterwards brought to the state of removal where they were immediately delivered to the mortgagee, in the absence of proof that the foreign law of the place where the property was located at the time the document purporting to be a mortgage was executed had ever created or recognized, by virtue of that document, any lien whatever.

"Removal of the property to another state with the consent of the mortgagee presents a different problem. There is considerable conflict of authority, among cases which concede that the registration of the mortgage in the state of the original situs will protect the lien of the mortgage after the removal of the property to another state without the knowledge or consent of the mortgagee, as to whether that doctrine will apply if the mortgagee consents to the removal. The trend of authority in such cases, however, seems to be toward the view that the doctrine should not apply in such a case. Some cases take the novel position of recognizing the validity of the mortgage even though the mortgagee knew of, or consented to, the removal."

We have in this state two recording statutes. The first is Section 698.01 Florida Statutes 1941 (same F.S.A.) and is the general recording statute. The other is Section 319.15 Florida Statutes 1941 (same F.S.A.), which reads as follows:

"319.15. Notice of lien on motor vehicles; recorded, subsequent creditors, etc.—No liens for purchase money or as security for a debt in the form of retain title contract, conditional bill of sale or chattel mortgage, or otherwise, on a motor vehicle, as now or may hereafter be defined by law, shall be enforceable in any of the courts of this State, against creditors or subsequent purchasers for a valuable consideration and without notice, unless a sworn notice of such lien, showing the following information, viz: (1) Name and address of the registered owner; (2) Date and amount of lien; (3) Description of the motor vehicle; particularly showing make, type, motor and serial number; and (4) Name and address of lien holder, shall be recorded in the office of the motor vehicle commissioner of the State of Florida, which filing is in lieu of all filing and recording now required or authorized by law, and shall be effective as constructive notice when filed; provided, however, that this law shall not apply or be effective as to any retain title contract, conditional bill of sale, chattel mortgage or other like instrument executed prior to August 1, 1941, nor to any retain title contract, conditional bill of sale, chattel mortgage or other like instrument covering any new or used motor vehicle floor plan stock of any motor vehicle dealer."

It is our conclusion that this last quoted statute controls in this case and that its effect is to obviate the general rule that,

"If the mortgage is valid according to the law of the state where the property was located before removal, as a general rule it will be enforced in the courts of the state to which the property has been removed as a matter of comity, although it is not executed or filed according to the requirements of the law of the state of removal. This is especially true where property is removed without the knowledge or consent of the mortgagee."

Because Section 319.15, supra, precludes the enforcement of a lien against a purchaser for value without notice of such lien unless a sworn notice of such lien showing information required by the statute shall be filed and recorded in the office of the Motor Vehicle Commissioner of the State of Florida. If this notice had been recorded by the plaintiff in the office of the Motor Vehicle Commissioner, it is safe to assume that a certificate of title showing no liens would not have been issued by the Motor Vehicle Commissioner either to Lee-Connor Motors or to their predecessor or predecessors in title. Whether the policy of this law is good or bad is not for us to say. The matter of the wisdom or good policy of a legislative act is a matter for the legislature to determine. The courts are required to give effect to the legislative act if it does not violate the constitution. In this case there is no question of violation of any constitutional provisions but only the withdrawing of comity which would otherwise exist.

For the reasons stated, the decree is reversed with directions that the bill of complaint be dismissed.

It is so ordered.

THOMAS, C. J., ADAMS and BARNS, JJ., concur.