Middleton, J.
Can The Kelley Kar Company, relying solely upon the reservation of title contained in the conditional sale contract executed in California, recover, in an Ohio court, possession of the automobile from Finkler who purchased it in good faith relying upon an Ohio certificate of title, regular on its face, and which named as the owner of the car the one from whom Finkler purchased it, there being no notation on the Ohio certificate of title so held by the seller of any liens, rights or interests held or claimed by The Kelley Kar Company?
The advent of motor vehicles early in the century created new problems and necessitated the enactment of laws not theretofore required. Aside from statutes regulating speed and other features of operation, the first act of the General Assembly relating specifically to motor vehicles was passed April 2, 1906 (98 Ohio Laws, 320). That act required registration of motor vehicles with the Secretary of State but the obvious purpose of the act was to collect a registration fee and not to control the method of transferring title. *545 Many amendatory acts were passed during the succeeding years which dealt with the same subject of registration and collection of registration fees but did not deal with the method of transfer.
On April 29, 1921, the General Assembly passed an act entitled: “To Prevent Traffic in Stolen Cars, Require Registration and Bill of Sale to be Given in the Event of Sale or Change in Ownership of Motor Vehicles.” (109 Ohio Laws, 330.) Further amendatory acts were passed in 1923, 1925 and 1931, but until the act of April 28, 1937, title to a motor vehicle was evidenced only by a bill of sale. There was no provision for certificates of title.
Because of their mobility and frequent change of ownership it was obviously necessary to create an instrument evidencing title which would more adequately protect innocent purchasers of motor vehicles. On April 28, 1937 (117 Ohio Laws, 373), the General Assembly passed an act entitled: “To Prevent the Importation of Stolen Motor. Vehicles and Thefts and Frauds in the Transfer of Title to Motor Vehicles by Amending Section 5546-29 of the General Code, by Supplementing Section 6290 by the Enactment of # * * [Sections 6290-2 to 6290-17, inclusive, General Code].” This act repealed corresponding sections of the then existing act. It became effective January 1, 1938, and with minor changes remains in the General Code as of the present date.
The act of 1937 repealed the bill of sale provisions of the Code and created the “certificate of title.”
The following are among the pertinent provisions of the Certificate of Title Act:
Sections 6290-3, General Code, provides:
“No person * * * shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title *546 in the purchaser, nor purchase or otherwise acquire a motor vehicle unless he shall obtain a certificate of title for the same in his name in accordance with the provisions of this chapter.”
By Sections 6290-5 and 6290-6, General Code, the clerk of courts is empowered to issue certificates of title and provision is made for compiling records thereof in the office of the clerk of courts and in the office of the Registrar of Motor Vehicles in Columbus.
By Section 6290-9, the sections of the General Code relating to the execution, filing and validity of chattel mortgages and conditional sales contracts, to wit, Sections 8560 to 8572, inclusive, are made inapplicable to motor vehicles and any liens or interests in motor vehicles are required thereafter to be noted upon the certificate of title.
Section 6290-13 prescribes the exact form of the certificate of title and the form of assignment to be placed upon it together with the forms of all other documents to be used in connection with the issuance, transfer and recording of certificates of title.
For the purpose of deciding the issues of this case, Section 6290-4 is particularly important. It provides:
“No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer’s or importer’s certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer’s or importer’s certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter *547 sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer’s or importer’s certificate duly issued, in accordance with the provisions of this chapter.” (Emphasis supplied.)
Finkler holds an Ohio certificate of title issued to him pursuant to the provisions of the statutes herein-above referred to, which certificate is in the form prescribed by the statutes. He purchased the automobile in question from John Anderson who likewise held an Ohio certificate of title, regular in form, which named said John Anderson as the owner. No liens or claims of any kind arising by reason of conditional sale contract or otherwise were noted upon the certificate of title so held by John Anderson and none are so noted upon the certificate of title held by Finkler.
This is an action for replevin of personal property. In such an action, the plaintiff must rely upon his own title or right to immediate possession and cannot prevail by reliance on the weakness of the title or right of possession of the defendant. Smith v. Barrick, 151 Ohio St., 201, 85 N. E. (2d), 101.
The Ohio Certificate of Title Act was held constitutional by this court in the case of State, ex rel. City Loan & Savings Co., v. Taggart, Recorder, 134 Ohio St., 374, 17 N. E. (2d), 758.
In Mielke v. Leeberson, 150 Ohio St., 528, 83 N. E. (2d), 209, 7 A. L. R. (2d), 1342, this court held that the language of Section 6290-4, General Code, means exactly what it says. The syllabus, which is the law of that case, reads:
“Under the plain and unambiguous language of Section 6290-4, General Code, a court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle, without the production of a certificate of title or manufacturer’s or importer’s certificate duly issued in accordance with the certifi *548 cate of title law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment.”
Since “the right, title, claim or interest of” plaintiff “in or to” the motor vehicle here asserted is not evidenced by “a certificate of title or manufacturer’s or importer’s certificate,” that claim of right cannot be recognized and the plaintiff cannot prevail in this action.
In the trial court the plaintiff successfully urged that the instant case is governed by Automobile Finance Co. v. Munday, 137 Ohio St., 504, 30 N. E. (2d), 1002. The facts of the Munday case are not at all similar to the facts involved in the instant case and the conclusion herein reached is not to be construed as contrary to any principle announced in the Mun-day case. The controlling issue in the Munday case concerned the validity of a chattel mortgage and the efforts of the finance company, which was the holder of the chattel mortgage in conjunction with Munday, to validate the chattel mortgage by reliance upon a certificate of title fraudulently procured by the finance company and Munday after Munday had sold the automobile to the defendant Usinger and had collected the purchase price thereof from Usinger. The certificate of title so fraudulently procured and relied upon was still in the hands of the finance company and Munday, who had perpetrated the fraud in its procurement and who were undertaking to assert the title evidenced thereby against Usinger, the innocent purchaser for value. The decision of this court in that case is not disturbed as it is not applicable in the instant case.
The plaintiff stresses the law of comity between states and relies in argument upon the case of Kanaga v. Taylor, 7 Ohio St., 134, decided in 1858, wherein a *549 chattel mortgage on a piano executed in a foreign state was enforced in Ohio against an innocent purchaser in Ohio for value. Even in that case the limitation of the application of the law of comity is recognized. The third paragraph of the syllabus reads:
“3. By the law of comity between different states, the lex loci contractus controls as to the validity and construction of personal contracts, though not as to the remedy or rule of evidence; nor where it clashes with the rights of our own citizens, or the policy of our own laws.”
Obviously, the General Assembly of Ohio had not then enacted Section 6290-4, General Code, which declares the policy of Ohio and is the law of Ohio with respect to evidence of title to motor vehicles.
Considerably later in the case of Baltimore & Ohio Rd. Co. v. Chambers, 73 Ohio St., 16, 23, 76 N. E., 91, 11 L. R. A. (N. S.), 1012, Judge Crew in his opinion said:
“In other words, the law of comity, so called, is not a law of absolute obligation, and its principles can never properly be invoked in aid of the enforcement of a foreign statute, where the effect of the enforcement of such foreign statute would be, or is, to set at naught the positive law or public policy of the particular forum to which resort is had.”
That case was carried to the Supreme Court of the United States where the judgment was affirmed. (207 U. S., 142, 52 L. Ed., 143, 28 S. Ct., 34.) In discussing the right of the plaintiff who was a citizen of Pennsylvania to maintain an action in Ohio upon a cause of action arising in Pennsylvania, and existing only by virtue of the statutes of Pennsylvania, Mr. Justice Moody, at page 151, made the following pertinent statement:
‘ ‘ She has not been denied access to the Ohio courts because she is not a citizen of that state, but because *550 the cause of action which she presents is not cognizable in those courts. She would have been denied hearing of the same cause for the same reason if she had been a citizen of Ohio.”
In the instant case the plaintiff, if a citizen and resident of Ohio, would be subject to the provisions of Section 6290-4, General Code, and would be unable to enforce a “right, title, claim or interest” in the automobile in question, if such right, title, claim or interest were not evidenced by notation on the certificate of title covering the automobile.
Such limitation of application of the rule of comity by the courts of last resort of other states is illustrated by the following decisions: Commercial Credit Co. v. Higbee, 92 Colo., 346, 20 P. (2d), 543; Universal Credit Co. v. Marks, 164 Md., 130, 163 A., 810; General Finance & Thrift Corp. v. Guthrie, 227 N. C., 431, 42 S. E. (2d), 601; Mosko v. Smith, 63 Wyo., 239, 179 P. (2d), 781.
Provisions of certificate of title acts in other states similar to the provisions of the Ohio act have been relied upon by the courts of those states in protecting the holder of a certificate of title executed in conformity with the laws of those states as against claims of right or title asserted by a resident of a foreign state and arising out of an instrument executed in such foreign state. Lee v. Bank of Georgia, 159 Fla., 481, 32 So. (2d), 7; Inman v. Rowsey. (Fla.), 41 So. (2d), 655; First National Bank of Jamestown v. Sheldon, 161 Pa. Sup., 265, 54 A. (2d), 61.
In Lee v. Bank of Georgia, supra, the court .made the following pertinent statement:
“Whether the policy of this law is good or bad is not for us to say. The matter of the wisdom or good policy of a legislative act is a matter for the Legislature to determine. The courts are required to give effect to the legislative act if it does not violate the *551 Constitution. In this case there is no question of the violation of any constitutional provision but only the withdrawing of comity which would otherwise exist.”
Innumerable cases can be cited wherein one in possession of an automobile and claiming title thereto through purchase in good faith and payment of value therefor was protected against claims based upon instruments executed in a state foreign to the state of the forum. In some instances the decisions were based upon certificate of title laws; in others the courts have held that the one who gave up possession of the automobile together with some indicia of title should suffer rather than a subsequent innocent purchaser for value. The conclusions are not always reached by the same reasoning but the results are the same. Russell Willis, Inc., v. Page, 213 S. C., 156, 48 S. E. (2d), 627; Seward v. Evrard, 240 Mo. App., 893, 222 S. E. (2d), 509; Shockley v. Hill, 91 Colo., 451, 15 P. (2d), 623; Pool v. George, 30 Tenn. App., 608, 209 S. E. (2d), 55; Nichols v. Bogda Motors, 118 Ind. App., 156, 77 N. E. (2d), 905; J. L. McClure Motor Co. v. McClain, 34 Ala. App., 614, 42 So. (2d), 266.
The General Assembly of the sovereign state of Ohio has declared the policy of this state by enactment of the Certificate of Title Act, containing Section 6290-4, General Code. The appellee has not complied with that law. The appellant has complied with it. Therefore, the appellee cannot prevail and procure possession of the automobile in question.
Tlie judgments of the Court of Appeals and the Common Pleas Court are reversed and final judgment is rendered for the appellant.

Judgment reversed.

Stewart, Tart, AÍatthias and Hart, JJ., concur.