Schoenmeyer, Appellee, *v.* Zahl, Appellant.

(No. 23085—Decided May 26, 1954.)

*Mr. Harry H. Elder,* for appellee.
*Messrs. Arter, Hadden, Wykoff & Van Duzer,* for appellant.

SKEEL, J.   This appeal comes to this court on questions of law from a judgment entered for the plaintiff in the Court of Common Pleas of Cuyahoga County. The action is one in tort in which the plaintiff claims to have been injured as a proximate result of the negligent operation of a motor vehicle operated by the defendant through her agent or servant.   Judgment was entered for the plaintiff on a jury verdict.

From the judgment thus entered the defendant claims the following errors:

"1. The Court of Common Pleas erred in overruling defendant-appellant's motion for a directed verdict made at the close of plaintiff-appellee's evidence;

"2. The Court of Common Pleas erred in overruling defendant-appellant's motion for a directed verdict made at the close of all the evidence;

"3. The Court of Common Pleas erred 'n overruling

defendant-appellant's motion for judgment notwithstanding the verdict of the jury, made before entry of the judgment;

"4. The Court of Common Pleas erred in overruling defendant-appellant's motion for judgment notwithstanding the verdict of the jury, made after entry of the judgment;

"5. The Court of Common Pleas erred in entering judgment upon the verdict of the jury."

The following facts are not in dispute.

On the morning of July 6, 1951, at about 10:45 a. m., a young man named Joseph D'Amato was driving a Packard automobile on East 120th Street in the city of Cleveland in a northerly direction, and when passing through the intersection of East 120th Street with Gay Avenue it came into collision with a Ford automobile then being driven in an easterly direction on Gay Avenue by plaintiff's husband. The plaintiff alleges that, as a proximate result of alleged acts of negligence of D'Amato in operating defendant's Packard automobile, she sustained certain injuries for which she seeks damages.

The question of whether or not D'Amato was responsible for the collision and plaintiff's injuries resulting therefrom is not raised in this appeal. The only question here presented is whether or not D'Amato was at the time of the collision acting for the defendant as her agent and employee.

The Packard automobile was purchased in January 1951, and the certificate of title was taken in the name of the defendant. The motor vehicle license was also issued to the defendant. It is the claim of the defendant, however, that she bought the Packard automobile for her son, Lyle Zahl, who was then 18 years old, that he alone was to take care of all repairs and necessary services, and that he had the right to and did use the automobile as owner. It is the further claim of the de-

fendant that at the time of the collision the Packard automobile was being operated by Joseph D'Amato, a friend of defendant's son, Lyle Zahl, for his own purposes wholly without her knowledge, consent or direction, either express or implied.

The night before the accident, Lyle Zahl, together with his father (Joseph D'Amato going along but in his own car), went to the Markad Garage at the intersection of Euclid and Superior Avenues, for a wheel alignment on the Packard automobile. The service man agreed that if the car was brought in the first thing the next morning (July 6, 1951) the work could be done and the car would be ready for delivery in the afternoon of the same day. There is some dispute as to whether or not the service man wanted them to leave the Packard at that time, but, because Lyle wanted to use it to get to work in the morning, and for that reason it was then agreed that Joseph D'Amato would drive Lyle to work and then return the car to the garage. In any event, they did not leave the Packard with the service man at that time.

The next morning (July 6, 1951) Lyle Zahl drove the Packard automobile to the residence of Joseph D'Amato at 14013 Bardwell Avenue, as was arranged the night before, so that D'Amato could drive Lyle to his work on a construction job located south of Nela Park on Noble Road. He was then directed by Lyle to return the Packard to the garage. After leaving Lyle at his place of work, D'Amato drove home for a cup of coffee (which home was on the approximate route that would be taken to get to the garage) and then (using the Packard instead of his own car) he drove to the house of a friend who lived south of Kinsman Road on East 124th Street to see about helping him paint his house. This trip took him a number of miles past and away from the location of the garage.

There is some suggestion in the record that he was

given permission by Lyle Zahl to use the Packard for this trip, but there is not the slightest dispute that the trip was wholly and solely for the benefit of D'Amato and in no way concerned with any benefit or carrying out of any purpose of Lyle Zahl or his mother.

After leaving the house of his friend on East 124th Street (there is some evidence in the record that it was East 121 Street) Joseph D'Amato started back and after progressing only a few blocks was involved in the collision that caused injury to the plaintiff. The site of the collision was several miles away from any route which could be reasonably taken in going from Noble Road to the intersection of Euclid and Superior Avenues in the city of East Cleveland.

There are just three questions which we need to consider.

First, is there any evidence to support the claim that Lyle Zahl was an agent acting in defendant's stead with regard to the use and repair of the Packard automobile? The plaintiff's contention on this subject begins with the undisputed fact that the defendant had the certificate of title and motor vehicle license issued in her name and argues from this fact that a person who assumes the obligation of repairs must, of necessity, be acting with regard thereto as the agent of the owner. But there is not one word of evidence that in making such repairs the son had the right or the power to bind the defendant for the payment of any of such obligations contracted for by him. The only evidence on this point is that the servicing and repair of the Packard automobile was the obligation of the son, for which the defendant assumed no responsibility. The son, Lyle Zahl, did not act as his mother's agent in contracting for repairs that might be necessary in servicing the Packard automobile. There is not a word that could even suggest that, for any such contract

which he might make, the repairman could look to this defendant for payment.

The fact that the record title of the automobile is in the defendant's name does not, standing alone, establish her liability for its negligent use by another. She may deliver it in bailment or assume any other legal relation as owner of the legal title as would be possible with regard to any other property, so long as the title is not the subject of such agreement. Section 4505.04, Revised Code, a part of the Certificate of Title Act, and the cases which have interpreted it to mean that one cannot prove a right in or damage to a motor vehicle without showing ownership thereto by a certificate of title, as provided by law, have no application here.

The case of *Garlick, Admr.,* v. *McFarland, a Minor,* 159 Ohio St., 539, 113 N. E. (2d), 92, dealt only with the title to an automobile as affecting an insurer of the vehicle, it being held that, even though a seller received full payment and made delivery of the vehicle to the purchaser, still, the insurer of the seller is liable for the negligence of the buyer in his use of the automobile before the certificate of title has been transferred under the particular terms of the insurance policy carried by the seller.

In the case of *In re Estate of Case,* 161 Ohio St., 288, 118 N. E. (2d), 836, it was held, in dealing with a claim of a resulting trust where a father purchased a motor vehicle and put the certificate of title in the name of his daughter, although he used it as his own, yet she was the owner, and that an automobile under the certificate of title law of Ohio cannot be the subject of a resulting trust.

In the case of *Kelley Kar Co.* v. *Finkler,* 155 Ohio St., 541, 99 N. E. (2d), 665, it was held:

"5. One who claims a right, title or interest in or to a motor vehicle by virtue of a conditional sales con-

tract executed in a state other than Ohio, which instrument purports to retain title in the claimant until the entire purchase price is paid, and which claimant does not possess an Ohic certificate of title covering such automobile and whose claim of right, title or interest under such conditional sales contract is not noted upon any Ohio certificate of title covering said automobile, cannot prevail in an action in replevin against one in Ohio who holds an Ohio certificate of title therefor and who purchased such automobile in good faith and for value from one in possession of said automobile and who held an Ohio certificate of title covering said automobile which did not bear on its face any notation of the right, title or interest claimed under such conditional sales contract so executed in a state other than Ohio. ''

And in the case of *Mielke* v. *Leeberson,* 150 Ohio St., 528, 83 N. E. (2d), 209, 7 A. L. R. (2d), 1342, it was held that a court cannot recognize the right, title, claim or interest in or to a motor vehicle without the production of a certificate of title issued under the Certificate of Title Act (Sections 4505.01 to 4505.19, Revised Code).

It is to be noted that these cases were all concerned with claims to the ownership or other rights by reason of the ownership of a motor vehicle and do not suggest that an owner is liable for the negligent use of a motor vehicle by another to which motor vehicle he has the certificate of title, where he does not direct the manner of its use through an agent or servant. The law of bailment has not been disturbed by these decisions dealing with the Certificate of Title Act.

There being no evidence in the record tending to establish that Lyle Zahl was, in the use and maintenance of the Packard automobile for his own benefit, either acting as defendant's agent or servant or that he was

acting for her or in her stead in any other capacity, there is, therefore, no legal basis upon which defendant can be held liable for any act of negligence on his part (when and if shown) in the use of said automobile or the negligence of one using it at his direction and carrying out his purposes.

The second question presented by the record has to do with the place where the collision occurred, it being claimed by defendant that Joseph D'Amato was then attending to his own business and that his conduct constituted a complete deviation from the purposes of any authority as an agent that might have been conferred upon him. Even if it should be considered that there is some evidence in the record upon which reasonable minds might differ as to whether Lyle Zahl, in having the Packard automobile serviced and repaired, did so as the agent or servant of his mother, and that he, as his mother's agent, had the power to bind her in appointing a substitute, yet at the time and place of the collision the Packard automobile was being used by Joseph D'Amato for his own purposes and without the knowledge or consent of the defendant. There is little, if any, support in the record that Lyle Zahl knew that D'Amato was going to use the Packard automobile to visit a friend on East 124th Street or East 121 Street south of Kinsman Road before returning it to the garage. The record shows clearly that it was Lyle Zahl's expectation that the Packard was to be delivered to the garage early that morning. Lyle Zahl testified that the Packard was to be back at the garage at 8 a. m. or as soon thereafter as it possibly could be. There is some evidence that D'Amato told Lyle Zahl that he was going to see a friend about a paint job, but there is no evidence that the Packard was to be used on such trip or that Lyle Zahl consented that it should be so used.

Whether D'Amato exceeded his authority in using

the Packard instead of his own car in making the trip to East 124th Street is, however, not important, for the reason that it is clear from the record that such trip was completely disassociated from and an absolute deviation from D'Amato's authority to return the Packard to the garage. Any negligent act resulting in damage to another while thus engaged was Joseph D'Amato's sole responsibility. Upon the undisputed facts, Joseph D'Amato, at the time of the accident, was acting exclusively for his own purposes, and for his negligent conduct under these circumstances no possible liability can be charged against this defendant.

The final question to be considered is the ability of an agent (if and when such relationship is established) to bind his principal in appointing another to act in his stead. If it could be said that it was Lyle Zahl's duty to see to the repairs of the Packard for his mother, he had no power to delegate such duty to another without his mother's consent. The authority of the case of *Cowley* v. *Bolander,* 120 Ohio St., 553, 166 N. E., 677, makes it clear that, before a servant or agent is empowered to procure assistance in the discharge of his duties, such power must be expressly conferred or arise by implication or necessity. Providing or accommodating Lyle Zahl with a means of going to his own work as an excuse for seeking the help of another to take the automobile to the garage for repairs would not come within the rule thus stated.

For the foregoing reasons, the judgment of the trial court is reversed and final judgment is rendered for the defendant.

*Judgment reversed.*

HURD, P. J., and KOVACHY, J., concur.