Bell, J.
Were it not for Section 4505.04, Revised Code, which provides that no court shall recognize the right, title, claim or interest of any person in or to any motor vehicle unless evidenced by a certificate of title or a manufacturer’s or importer’s certificate, it would be an easy matter to hold that, since Bartlett dealt with Malcolm, title .passed to Malcolm and *359 liability attached to him in spite of an assumed name, and that, therefore, Henry had nothing which he could convey to Vira. However, since both indicia of title — the manufacturer’s statement of origin and the Florida certificate of title — are in Henry’s name, it is necessary to consider the priorities of the two mortgages.
Plaintiff’s contention for priority is based on a failure of Bartlett to comply with Section 4505.06, Revised Code, which reads in part as follows:
# In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser. In all other cases, such certificates shall be obtained by the purchaser.” (Emphasis added.)
Had Bartlett obtained such an Ohio certificate, contends plaintiff, the Bolners would not have been in a position to defraud anyone. Obviously, this theory hinges on whether Bartlett was a “dealer.”
The following testimony of Mary Nefagna, vice-president of Bartlett, is the only testimony in the record that sheds any light on the nature of the company:
‘ ‘ Q. Will you explain in detail what the nature of the business of the Bartlett Trailer Corporation is? A. Yes, sir. We are engaged in the manufacture of truck trailers of all types and also the sale of these trailers.
“Q. Can you be more explicit? A. Yes, we are not a very large company and for that reason, production trailers isn’t our big business. We make a lot of special equipment.
“Q. Are you saying from the raw material to the finished trailer? A. Yes, sir.
“Q. Without being vice-president what are your specific duties? A. I do most of the purchasing of the raw material that go into the trailers. I also am practically in charge of all the credits, deciding if a customer passes his credit or not. I am also in charge of the advertising for the Bartlett Trailer Corporation. I also sell trailers.”
Bouvier’s Law Dictionary (Baldwin’s Century Edition), contains the following two definitions of “dealer”:
“A dealer in the popular, and therefore in the statutory *360 sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again. ’ ’
“He stands intermediately between the producer and the consumer, and depends for his profit, not upon the labor he bestows upon his commodities, but upon the skill and foresight with which he watches the market. ’ ’
It is apparent that under these definitions Bartlett was not a “dealer” in motor vehicles and was, therefore, not required by Ohio law to do more than to issue a manufacturer’s certificate of origin to the purchaser.
It is conceded that in this case no Ohio certificate of title was ever issued. The case is therefore easily distinguished from Mielke v. Leeberson, 150 Ohio St., 528, 83 N. E. (2d), 209, 7 A. L. R. (2d), 1342; and Kelley Kar Co. v. Finkler, 155 Ohio St., 541, 99 N. E. (2d), 665. It is strikingly similar, however, to In re Swesey (June 2, 1953, United States District Court for the Northern District of Ohio), 112 E. Supp., 773. In that case a resident of Ohio purchased an automobile in Michigan and gave a purchase-money mortgage to the seller. Representing that he resided in Ohio but had obtained employment in Michigan, the purchaser obtained a Michigan certificate of title on which the chattel mortgage was noted. When the owner became bankrupt, his trustee urged that the Michigan mortgage was not valid because the. bankrupt had not obtained an Ohio certificate of title. In holding that the Ohio certificate of title law does not have extraterritorial effect and that an out-of-state certificate of title may be recognized by the courts of this state without the issuance of an Ohio title certificate, the court said:
“As appears from the admitted facts, the automobile in this case was not sold or disposed of or mortgaged or encumbered in Ohio. It was sold and mortgaged in Michigan. There is no question raised but that the sale and encumbrance of this automobile was valid under the laws of Michigan. There is nothing in the Ohio certificate of title law which indicated an intention on the part of the Legislature to make a transaction of this kind, valid under Michigan laws, void under the laws of Ohio, and the court will not read into the statute language which is not there.”
Had Malcolm obtained an Ohio certificate of title based on *361 the manufacturer’s statement of origin, plaintiff could not have obtained a first mortgage because the Bartlett lien would have been noted on the Ohio title certificate. A similar result would have been reached had Malcolm obtained an Ohio title based on the Florida title. It would indeed be incongruous to hold that plaintiff has a first lien because an Ohio certificate was not issued when she could not possibly have had a first lien if an Ohio certificate had been issued.
The Florida certificate of title was admitted in evidence in the court below. It represents a public act and record of the state of Florida and as such was entitled to be accorded full faith and credit by the Ohio court. The policy of the Ohio title law is to protect the owners and mortgagees of motor vehicles. The noting of Bartlett’s lien on the Florida certificate was in accord with the public policy of Ohio as expressed in its statutes. The Florida certificate should therefore have been recognized as according priority to Bartlett.
It follows that the judgments of the courts below must be reversed and final judgment entered for Bartlett.
In view of this result, the allocation of receiver’s fees as made by the court below does not appear inequitable and is, therefore, not disturbed.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Tart, JJ., concur.