Taft, C. J.
The agreed statement of facts discloses the following pertinent facts with respect to the Pontiac automobile which plaintiff seeks to replevin from defendant:
1. On January 12,1961, Clarke Pontiac, Inc., entered into a conditional sales agreement with Betty Williams, providing for payment of a balance of $3,528.72 at $98.02 per month, possession of the Pontiac was delivered to Betty Williams and the agreement was assigned to plaintiff. The agreement was later recorded as required by the West Virginia statutes. Nothing *3 has been paid on that agreement since the February 1961 monthly payment.
2. On January 16, 1961, Betty Williams and two others applied for a West Virginia certificate of title for the Pontiac in the name of Hess Buick Company and, on January 17, 1961, obtained such a certificate. No liens were noted on this certificate. The certificate indicated that Hess Buick had received its title directly from the manufacturer. The statement to that effect, made by Hess Buick or its agent in applying for the certificate, was false.
3. Subsequently, on January 18, 1961, another West Virginia certificate of title was issued to Betty Williams. This certificate bore a notation of plaintiff’s lien in the amount of $3,528.72.
4. On January 19, 1961, defendant, a resident of Ohio, purchased the Pontiac from Hess Buick Company at a Columbus, Ohio, automobile auction in good faith without any knowledge of the foregoing facts.
5. Defendant took possession of the Pontiac, and thereafter on January 20, 1961, defendant presented the Hess Buick Company West Virginia certificate of title to the clerk of courts of his county and received an Ohio certificate of title for the Pontiac. That certificate does not show the lien upon which plaintiff relies.
On the foregoing facts, paragraph five of the syllabus and the decision in Kelley Kar Co. v. Finkler (1951), 155 Ohio St., 541, 99 N. E. (2d), 665, clearly require a judgment for defendant. That paragraph reads:
“One who claims a right, title or interest in or to a motor vehicle by virtue of a conditional sales contract executed in a state other than Ohio, which instrument purports to retain title in the claimant until the entire purchase price is paid, and which claimant does not possess an Ohio certificate of title covering such automobile and whose claim of right, title or interest under such conditional sales contract is not noted upon any Ohio certificate of title covering said automobile, cannot prevail in an action in replevin against one in Ohio who holds an Ohio certificate of title therefor and who purchased such automobile in good faith and for value from one in possession of said automo *4 bile and wbo held an Ohio certificate of title covering said automobile which did not bear on its face any notation of the right, title or interest claimed under such conditional sales contract so executed in a state other than Ohio. ’ ’
After the decision in the Kelley Kar case, it was generally recognized that the clear words of the Ohio Certificate of Title Act had in effect imparted negotiability in Ohio to an automobile in the possession of one holding an Ohio certificate of title showing him as owner. Cf. Shaw v. Wearley Motor Co. (1962), 173 Ohio St., 185, at 188 and 189, 180 N. E. (2d), 823.
Thus, innocent Ohio purchasers with Ohio certificates of title have usually been protected by the reported decisions of our Courts of Appeals against out-of-state lien claimants whose claims were either unrecorded or so recorded as to prevent any reasonable chance of discovery. Royal Industrial Bank of Louisville v. Klein (Hamilton County, 1952), 92 Ohio App., 309, 110 N. E. (2d), 40; Commercial Credit Corp. v. Reising (Hamilton County, 1953), 96 Ohio App., 445, 122 N. E. (2d), 301; Fayette Investment Corp. v. Jack Johnson Chevrolet Co., 119 Ohio App., 111; Riley v. Motorists Mutual Ins. Co. (this day decided), 176 Ohio St., 16. But see Ohio Casualty Ins. Co. v. Guterman (Montgomery County, 1954), 97 Ohio App., 237, 125 N. E. (2d), 350, in accord with Atlantic Finance Co., Inc., v. Fisher (1962), 173 Ohio St., 387, 183 N. E. (2d), 135, which is being overruled by this decision. Associates Discount Corp. v. Colonial Finance Co. (Mahoning County, 1950), 88 Ohio App., 205, 98 N. E. (2d), 848, and Mock v. Kaffits, Chief of Police (Franklin County, 1944), 75 Ohio App., 305, 62 N. E. (2d), 172, were decided before our decision in the Kelley Kar case and appear to be irreconcilable with that decision and with our decision in the instant case. Gibson v. Bolner (1956), 165 Ohio St., 357, 135 N. E. (2d), 353, is a case where no one had an Ohio certificate of title. In the opinion in the Kelley Kar case (550, 551), it is stated:
‘ ‘ ‘Whether the policy of this law is good or bad is not for us to say. The matter of the wisdom or good policy of a legislative act is a matter for the Legislature to determine. The courts are required to give effect to the legislative act if it does not violate the Constitution. In this case there is no question of *5 the violation of any constitutional provision hut only the withdrawing of comity which would otherwise exist.’
£<* * #
‘ ‘ The General Assembly of the sovereign state of Ohio has declared the policy of this state by enactment of the Certificate of Title Act containing Section 6290-4, General Code [now Section 4505.04, Revised Code]. The appellee has not complied with that law. The appellant has complied with it. Therefore the appellee cannot prevail and procure possession of the automobile in question.”
This court thereby asked the General Assembly to change the law if it disagreed with the interpretation which we had given to it.
The General Assembly not only acquiesced in the effect given to Section 4505.04, Revised Code, by our decision in the Kelley Kar ease but affirmatively approved it. Thus, at its next session after that decision, the General Assembly amended Section 4505.04 apparently for the purpose of limiting to some extent the literal application given by this court to that statute. But, in doing so, it only authorized one additional means of evidencing a ‘ ‘ right, title, claim or interest * * * in or to any motor vehicle,” other than “a certificate of title or a manufacturer’s or importer’s certificate issued in accordance with Sections 4505.01 to 4505.19.” The only additional means so authorized was “by admission in the pleadings or stipulations of the parties.” 125 Ohio Laws, 117, effective October 2, 1953. See Peters Motors, Inc., v. Rodgers (1954), 161 Ohio St., 480, 120 N. E. (2d), 80, which reached the same conclusion without reference to amendment of the statute.
At that time, the Genéral Assembly re-enacted the words of Section 4505.04 which this court had applied in the Kelley Kar case and thereby gave its express approval to that decision’s construction of those words in that case.
Thus, in order to affirm the judgment of the Court of Appeals and hold for plaintiff in the instant case, it would be necessary not only to overrule our decision in the Kelley Kar case but also to modify the intention so expressed by the General Assembly. To do so would obviously amount to a usurpation of legislative power by this court.
*6 There is nothing unusual about our decision in the Kelley Kar case. This court had previously recognized that an innocent purchaser of personal property for value without notice may be protected against the claim of an innocent owner who entrusted that property to a wrongdoer and thereby made it possible for the wrongdoer to fraudulently and wrongfully dispose of it. See Lippincott Distributing Co. v. Peoples Commercial & Savings Bank (1940), 137 Ohio St., 399, 30 N. E. (2d), 691.
The dissenting opinion recognizes that the words of Section 4505.04, Revised Code, “standing alone,” as well as our decision in the Kelley Kar case, require the reversal of the judgment of the Court of Appeals. In order to avoid the effect of the words of that statute and to support the overruling of our decision in the Kelley Kar case applying those words, reliance is placed upon “the purpose of the Certificate of Title Act, as stated in its title,” and upon Sections 4505.10, 4505.02 and 4505.17, Revised Code.
Until the enactment of the Certificate of Title Act (now Section 4505.01 et seq., Revised Code) in 1937, the only legal protection which a buyer of a motor vehicle had for the title to a motor vehicle he was purchasing was provided by the statutory requirement that a motor vehicle registration and a bill of sale be given by the seller to the buyer. See Kelley Kar Co. v. Finkler, supra (155 Ohio St., 541), 545. As a result, a buyer usually had no means of determining whether he would receive a valid title. He had to rely almost entirely on the seller’s representations. This made it relatively easy to dispose of stolen motor vehicles in Ohio and so encouraged the importation of stolen motor vehicles as well as frauds in the transfer of titles to motor vehicles.
Because of the Certificate of Title Act, it is not now easy for one, who does not have a valid title to a motor vehicle, to get what he needs to sell that motor vehicle in Ohio, i. e., an Ohio certificate of title. In order to do so fraudulently, he exposes himself to conviction as a felon. See Section 4505.19, Revised Code. He also runs the risk of an early discovery of any previous theft of the motor vehicle.
For example, Section 4505.08, Revised Code, provides in part:
*7 “The clerk of courts * * # shall issue certificates of title in triplicate. * * * [the duplicate] copy shall be transmitted on the day it is issued to the Registrar of Motor Vehicles.”
Section 4505.02, Revised Code, provides in part:
“The registrar shall check with his record all duplicate certificates of title received * *
Section 4505.17, Revised Code, provides in part:
“The registrar, whenever he receives a report of the theft or conversion of a motor vehicle, whether the same has been registered or not and whether owned in this or any other state, shall make a distinctive record thereof, including the make of the stolen vehicle and its manufacturer’s serial number or motor number, and shall file the same in the numerical order of the manufacturer’s serial number or motor number with the index records of the vehicles of such make. * * *
“In the event of the receipt from any clerk * * * of a copy of a certificate of title to such motor vehicle, the registrar shall immediately notify the rightful owner thereof and the clerk who issued such certificate # * *, and if, upon investigation, it appears that such certificate of title was improperly issued, the registrar shall immediately cancel same.”
Thus, by reason of the provisions of the Certificate of Title Act, it has been made much more difficult and hazardous than it ever was before for a wrongdoer to dispose of a stolen motor vehicle in Ohio. It is apparent that, as contemplated by the words of the purpose clause of the Certificate of Title Act, “thefts” of motor vehicles and “the importation of stolen motor vehicles,” as well as “frauds in the transfer of titles to motor vehicles,” are all discouraged by the foregoing provisions of the act.
The protection of innocent Ohio purchasers of motor vehicles is not inconsistent and does not interfere with those provisions of the act, but instead such protection obviously represents an additional preventative against “frauds in the transfer of title to motor vehicles.”
In Kelley Kar Co. v. Finkler, supra (155 Ohio St., 541), 545, Judge Middleton described the reason for enactment of the Certificate of Title Act, as follows:
“Because of their mobility and frequent change of owner *8 ship it was obviously necessary to create an instrument evidencing title which would more adequately protect innocent purchasers of motor vehicles.”
Section 4505.10, Revised Code, does indicate that there may be instances where a certificate can be issued to someone who does not claim under an Ohio certificate. However, there is nothing in that statute to indicate that, where a certificate has been issued to a bona fide purchaser, the certificate so issued may not be valid. (It may be observed that plaintiff has made no effort to use this statute to acquire an Ohio certificate that might note his interest thereon.)
The dissenting opinion apparently relies upon Sections 4505.02 and 4505.17, Revised Code, because of the assumption that the registrar may, without having his determination reviewed by any court, finally determine that a previously issued certificate of title should be cancelled. Obviously, the ruling of the registrar, that a certificate had been “improperly issued,” would not be immune from judicial review. See State, ex rel. City Loan & Savings Co., v. Taggart, Recorder (1938), 134 Ohio St., 374, 378, 17 N. E. (2d), 758. The words “improperly issued” in those two sections are not defined, and there is nothing in either section requiring or even suggesting the conclusion that a certificate issued to a bona fide purchaser should be considered as “improperly issued.” On the contrary, Section 4505.02, Revised Code, even states that cancellation of a certificate “shall not affect the validity of any lien noted” on the cancelled certificate. (It may be observed that there is nothing to indicate that defendant’s certificate of title has been can-celled as “improperly issued.”)
It is contended that protection of one, who acquires as a bona fide purchaser a motor vehicle, together with an apparently valid certificate of title thereto, would make Ohio ‘ ‘ a dumping ground for converted motor vehicles.” This contention is based upon the false assumption that such protection would be inconsistent with prevention of the importation into Ohio of stolen motor vehicles, thefts of motor vehicles and frauds in the transfer of title to motor vehicles.
Both plaintiff, who is an assignee of rights of the out-of-state conditional vendor, and defendant, the Ohio resident who *9 purchased the Pontiac in Ohio and secured a good Ohio certificate of title for it, are innocent parties. One must suffer a loss equal to the value of the Pontiac, subject to the remote possibility of recovery from the wrongdoer whose “fraud in the transfer of title” to the Pontiac was the cause of that loss. That wrongdoer is the conditional vendee to whom the Pontiac was delivered by the vendor upon whose lien plaintiff relies.
As pointed out by Middleton, J., in his opinion in Kelley Kar Co. v. Finkler, supra (155 Ohio St., 541), 551:
“Innumerable cases can be cited wherein one in possession of an automobile and claiming title thereto through purchase in good faith and payment of value therefor was protected against claims based upon instruments executed in a state foreign to the state of the forum. In some instances the decisions were based upon certificate of title laws; in others the courts have held that the one who gave up possession of the automobile together with some indicia of title should suffer rather than a subsequent innocent purchaser for value. ’ ’
The trial court and the Court of Appeals in this case were undoubtedly misled by our recent decision in Atlantic Finance Co., Inc., v. Fisher (1962), 173 Ohio St., 387, 183 N. E. (2d), 135. The opinion (page 390) in that case offers as one distinction of the Kelley Kar case that, in the Atlantic Finance case, neither of the innocent parties “by its or his actions induced the problem or could have prevented it.”
The opinion by Kerns, J., in the Court of Appeals case of Fayette Investment Corp. v. Jack Johnson Chevrolet Co., supra (119 Ohio App., 111), recognizes this in stating that “the * * * clear line of distinction between the Atlantic Finance Go. case and the Kelley Kar case * * * is that the plaintiff in the one voluntarily relinquished possession of the automobile, whereas in the other, the plaintiff did not voluntarily relinquish possession. ’ ’
However, there is nothing in the Certificate of Title Act to justify the conclusion that the General Assembly intended to protect a bona fide purchaser of an automobile where his Ohio certificate resulted from the fraudulent representations of a swindler, but not where that certificate resulted from such representations by a thief.
*10 The decision in the Atlantic Finance case was apparently-based upon the following broad statement found in the opinion (page 391):
“It is well settled that * * * a bona fide purchaser for value without notice from a thief obtains no better title than the thief. ’ ’
No authorities are cited in support of that broad statement.
Even apart from statute, there are instances where a bona fide purchaser for value without notice from a thief will obtain a better title than a thief.
For example this is true with respect to money. 36 American Jurisprudence, 460, Section 6.
A statute of limitations may even have the effect of transferring title to a thief. See Ames, Lectures on Legal History (1913), 201.
Certainly, statutes can provide for protection in reasonable instances of one who purchases property in good faith for value without notice from a thief. See Lalive, The Transfer of Chattels in the Conflict of Laws (1955), 176,177; Note: The power of a state to affect title in a chattel atypically removed to it (1947), 47 Columbia Law Review, 767; Developments in the Law — Conflict of Laws (1937), 50 Harvard Law Review, 1119,1136.
For example, a bill of lading or a warehouse receipt is regarded as a symbol of the property for which it is issued. In other words, title to the property for which such a document has been issued may in effect be embodied in such document. In such instance, transfer of such a document of title will be given the same effect as would transfer of the property itself. The Uniform Sales Act (former Section 1315.39, Revised Code), the Uniform Warehouse Receipts Act (former Section 1323.47, Revised Code), and the Uniform Bill of Ladings Act (former Section 4965.35, Revised Code) expressly provided for protection of a bona fide purchaser of such a document even where stolen from its true owner. The Uniform Commercial Code contains similar provisions (Section 1307.30, Revised Code).
There is, therefore, nothing unusual in having the clear words of the Certificate of Title Act impart negotiability to an automobile in the possession of one having an Ohio certificate of title showing him as the owner.
This court reached an erroneous result in the Atlantic Fi *11 nance case because it not only refused to recognize that a statute could protect a bona fide purchaser of a chattel by enabling him to obtain a better title than his vendor but also because it apparently unreasonably assumed (opinion, page 390) that the “public policy of Ohio of protecting innocent purchasers * * * should weigh no more heavily in the scales than the protection of innocent citizens of our sister states from theft.” If, as the opinion recognizes (page 390), “one of two equally innocent parties must bear the loss,” is it reasonable to assume that the Ohio General Assembly intended to impose that loss on the one who is an Ohio bona fide purchaser with an Ohio certificate of title, especially where the General Assembly had specifically stated (Section 4505.04, Revised Code) that “no court * * * shall recognize the right, title, claim or interest of any person in or to any motor vehicle * * * unless evidenced # * by a certificate of title or a manufacturer’s or importer’s certificate issued in accordance with” the Ohio Certificate of Title Act?
That a principal purpose of the Ohio Certificate of Title Act is to protect Ohio bona fide purchasers against wrongdoers is also made clear by our decision in Mutual Finance Co. v. Kozoil (1961), 172 Ohio St., 265, 175 N. E. (2d), 88, protecting a bona fide purchaser of a motor vehicle even without a certificate of title against a lienholder with a manufacturer’s certificate for the motor vehicle, where that lienholder had made it possible by his inaction for his debtor to defraud the purchaser. In that case, a finance company advanced to a manufacturer the wholesale purchase price of an automobile purchased by a dealer. As security, the finance company was to retain possession of the manufacturer’s statement of origin until the dealer paid him for the automobile after its sale. When paid, the finance company was then to deliver the manufacturer’s statement so as to enable the dealer to get a certificate of title for the buyer. The dealer delivered an automobile to a buyer but failed to pay the finance company for it before the dealer became bankrupt. In holding that the finance company could not recover possession of the automobile from the buyer and was required to deliver the manufacturer’s statement of ownership to the clerk of courts for issuance of a certificate of title to the buyer, this court said in a per curiam opinion:
“ # The title law was passed for the purpose of pre *12 venting fraud and deception in passing title to automobiles, not to encourage it. The purchaser, as well as the lending agency, •is entitled to its benefits. * # *
it i-X * *
“ c* * * It seems incredible that judicial interpretation of the motor vehicle title law should find within its provisions a legislative purpose to defeat the right of an innocent purchaser for value * * V ”
From what we have said, it is apparent that the judgment of the Court of Appeals must be reversed and final judgment must be rendered for defendant.

Judgment reversed.

O’Neill, Herbert and Gibson, JJ., concur.
Zimmerman, Matthias and Grieeith, JJ., dissent.