Gibson, J.,
dissenting. In this case the plaintiff-insured has instituted an action against his insurer, the defendant, for the value of a 1958 Chevrolet automobile, which was admittedly the subject of a policy of insurance against the hazards of “theft, robbery or pilferage”. The policy of insurance is not *21 in evidence; therefore, any contractual definition of the words, “theft”, “robbery” or “pilferage,” is not before this court.
This court in Toms v. Hartford Fire Ins. Co. (1945), 146 Ohio St., 39, stated in the syllabus the rules governing this controversy as follows:
“1. A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubftul, uncertain or ambiguous.
“2. Where the term ‘theft’ is employed but not defined in an automobile insurance contract, it is to be given the usual meaning and understanding accorded it by persons in the ordinary walks of life.
“3. In an insurance contract insuring against the ‘theft’ of an automobile, the term ‘theft’ comprehends the wilful taking or appropriation of one person’s automobile by another wrongfully, without justification and with the design to hold or make use of the vehicle in violation of the rights of the owner, and recovery by the insured for loss due to ‘theft’ may be had where a taking or appropriation of the insured automobile * * * is shown. ’ ’
Undoubtedly the insurance contract in the instant case was prepared by the insurer. The usual meaning and understanding accorded to the word, “theft,” is broader in scope than the strict legal concept of “larceny”. 3 Bouvier’s Law Dictionary (Rawles 3d Rev.), 3267. In the absence of proof of a different contractual meaning of the term, “theft,” it is assumed that the broader ordinary meaning was intended by the contracting parties. This assumption is in conformity with the pronouncement in Peterson, Admr., v. National Mutual Ins. Co., 175 Ohio St., 551, wherein Judge Zimmerman said:
“An established principle of insurance law, recognized in many decisions of this court, is that an insurance contract, in case of doubt as to the meaning and intent thereof, is to be interpreted against the insurer, the one who drew it and who is responsible for the language employed, and in favor of the insured. ’ ’
Section 4505.04, Revised Code, provides in pertinent part that no Ohio court in any case at law or in equity shall recog *22 nize the right, title, claim or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or by admission in the pleadings or stipulation of the parties. This court in Kelley Kar Co. v. Finkler (1951), 155 Ohio St., 541, in Brewer v. DeCant (1958), 167 Ohio St., 411, and again, within this term of court, in Commercial Credit Corp. v. Pottmeyer (this day decided), 176 Ohio St., 1, and in State, ex rel. Ohio Auto & Truck Wrecking Assn., Inc., v. Mainwaring, Registrar (1964), 175 Ohio St., 497, has declared that only a person who holds an Ohio certificate of title in his own name can be recognized as having claim or interest in such motor vehicle. In the light of the legislative mandate and the well established precedents of this court, it is clear the C. S. Hamilton Motor Company which through self-help took possession of the automobile in this case could not have done so through legal action in the courts of this state. If possession of the automobile could not have been obtained through the courts of Ohio, it is difficult to see how it can be said that the automobile was taken other than wrongfully, without justification and without claim or color of right.
Obviously, the insurer should be able to and did rely upon the insured’s Ohio certificate of title as establishing his title and interest in the motor vehicle when the policy of insurance was issued. The insurer should not be permitted now to deny the same evidence of the insured’s title and interest in the motor vehicle.
To hold that there was no theft where the C. S. Hamilton Motor Company through self-help repossessed the automobile in Ohio under a subsisting and recorded Texas mortgage lien thereon is (1) to recognize the claim or interest of a person in or to a motor vehicle who does not hold an Ohio certificate of title, and (2) to construe the insurance contract liberally in favor of the insurer instead of the insured, all contrary to well established Ohio law.
For the above reasons, I would affirm the judgment of the Court of Appeals.
Taft, C. J., concurs in the foregoing dissenting opinion.